J. W. MOORE et al v. W. H. JORDAN et al.

*Docketed Judgments—Lien on After Acquired Lands—*
*Priorities.*

Under Section 435 of *The Code* the lien of docketed judgments attaches to after-acquired lands in the same county at the moment that the title vests in the judgment debtor and the proceeds of a sale under such judgments should be distributed *pro rata* without reference to the day when they were docketed. (Syllabus by the Chief Justice.) (CLARK, J., dissents, *arguendo*, in which AVERY, J., concurs.)

This was a special proceeding brought by the plaintiffs against the defendants for the sale of certain lands for partition.

The plaintiffs, J. W. Moore and others, and the defendants, W. B. Jordan and others, were heirs-at-law of Samuel E. Westray, who died domiciled in the county of Nash, on the 15th day of February, 1894. He was at the time of his death seized and possessed of lands lying in Edgecombe and Nash counties. William S. Battle, one of the heirs-at-law of S. E. Westray, was indebted to various parties who had obtained judgment against him and had caused the same to be docketed in said counties. The said judg-

ment creditors were made parties to the proceeding for the sale of the lands and consented thereto. Sales were made by Commissioners appointed by the Court, and upon the coming in of the report the sales were duly confirmed. From the sales of lands lying in the county of Nash, the share of the said William S. Battle was nine hundred and seventy dollars ($970) from which the sum of two hundred and nine dollars and thirty one cents ($209.31) was allotted on account of his homestead, leaving a net balance of seven hundred and sixty dollars and sixty nine cents ($760.69) to be applied to the judgments docketed and in force in the said county of Nash and against the said William S. Battle. The amount and date of docketing of the judgments are set out in the decree rendered herein by the following judgments against the defendant W. S. Battle and others docketed in the Superior Court of Nash County, to-wit:

1. In favor of E. B. Lewis for the sum of two thousand dollars with eight per cent interest from January 1st, 1882, less payment of two hundred dollars of date December 1st, 1884, and docketed August 30th, 1884.

2. In favor of P. C. Cameron, administrator, for the sum of three thousand dollars with eight per cent interest.

The Clerk decreed as follows:

That the judgments aforesaid docketed in the County of Nash prior to the death of S. E. Westray on February 15th, 1894, when the interest of W. S. Battle in the real estate of the said Westray lying in said County was acquired, stand on the same footing, and the liens of the same attach at one and the same time; and that the fund arising from the sale of the said lands lying in the County of Nash and remaining in the hands of the Clerk of this Court, after paying the said sum of two hundred and nine dollars and thirty one cents toward the homestead of the said W. S.

Battle and its proportional part of the cost hereof as here-inafter provided, shall be disbursed and paid *pro rata* upon the judgments aforesaid docketed in the Superior Court in Nash County in favor of E. R. Lewis, P. C. Cameron, Adm'r, and P. C. Cameron.

That the funds hereafter arising from the sale of W. S. Battle's interest in said lands lying in the County of Nash are to be disbursed and paid upon the aforesaid judgments docketed in said county prior to the death of the said Westray in the same manner and proportion as is herein provided.

The defendant E. B. Lewis appealed from the decree of the clerk of the Superior Court providing that the funds arising from the sale of the Nash county lands should be disbursed and paid *pro rata* upon the judgments docketed and in force in Nash County in favor of E. B. Lewis and P. C. Cameron, Admistrator, and P. C. Cameron.

Upon the hearing of the defendant E. B. Lewis' appeal by *James D. McIver, Judge*, riding the Second Judicial District, the judgment of the clerk declaring the judgments docketed in the county of Nash prior to the death of Samuel E. Westray on February 15th, 1894, when the interest of William S. Battle in the real estate of the said Westray lying in said county was acquired, stand on the same footing, and the liens of the same attach at one and the same time, was affirmed.

The defendant E. B. Lewis appealed from the said judgment.

*Mr. R. B. Peebles*, for plaintiff.
*Mr. H. G. Connor*, for E. B. Lewis (appellant).

FAIRCLOTH, C. J. : We are now confronted for the first time with the question whether previously docketed judgments take, by their priorities, according to the dates when

docketed, the after acquired lands of the judgment debtor, or whether they take *pro rata*, the after acquired lands cast by descent on the judgment debtor. The defendant Lewis contends that, as was the case under our former system, the lien when it attaches relates back to the day when the judgment was docketed. This is denied by the other defendants. It is conceded that the liens of the several judgments, on after acquired lands, attach *eo instanti*, and at the moment when the title vests in the judgment debtor, also that the lien of each judgment attaches at the time it is docketed on all lands then owned by the debtor. It will be observed that those liens arise from the docketing and priorities accordingly are established and not by any principle of relation. Neither the court nor counsel have been able to find any decided case on this question in any of the States except one in Oregon which will be referred to later. We are therefore to construe our Statute, *Code*, Sec. 435, according to its meaning and on general principles of reasoning. At common law no judgment, *proprio vigore*, was a lien upon land. Under our former system when an execution issued and was levied upon land, the lien thereby acquired related to the *teste* of the execution, not by reason of any self-executing-force in the *fi. fa.* or the judgment proper, but by force of a statute, West, 2, which was enacted expressly to give the lien created by the levy a relation to the *teste* of the writ. The relation was not given upon any idea of rewarding the diligent creditor, but to take from the debtor the power to transfer his property to others and thus deprive the creditor of the fruit of his recovery. This reason does not now exist under our system, because the docketed judgment fixes the lien and the debtor cannot escape it, and if he sells thereafter the purchaser takes subject to the statutory lien of our *Code*, and the principle of relation is not

necessary to protect the creditor. *Cessante ratione cessat ipsa lex.* Whilst this question was not presented in *Sawyer* v. *Sawyer*, 93 N. C., 321, this Court remarked: "this statutory legislation (*Code*, Sec. 435) must therefore, to no inconsiderable extent, dispense with many rules before in force, and especially that of relation of the execution to its *teste*, as unnecessary and inapplicable to the new procedure and practice." We must then look to the act itself for its true intent. *The Code* no where directly or indirectly enacts the doctrine of relation except in Section 433, which declares that all judgments rendered in the Superior Court and docketed within ten days after the term "shall be held and deemed to have been rendered and docketed on the first day of said term." So, the legislature did advert to the doctrine of relation, but failed to declare that it should prevail except in said Section 433, and its silence in all other sections affords a fair inference that it did not intend that it should prevail in Section 435. *Expressio unius exclusio alterius.* Assuming that the legislature had power to give the lien a retroactive effect, as was done by Westminster 2, yet it has not done so and it would be some strain on the legal mind to say that a docketed judgment, even in effect, was a lien upon land during a period when the judgment debtor had no land. A lien cannot antedate its origin without statutory aid.

There seems to be no reason why priority should be allowed when the title to the land and the several liens occur at the same moment. There is no equitable ground on which to place it, because one judgment debt, in the eye of the law, is as just as any other and there is no natural justice in the proposition.

The Court in *Creighton* v *Leeds*, 9 Oregon, 215, under a similar statute and in a like case, held that the first docketed judgment had priority over the other judgments

MOORE v. JORDAN.

on after acquired lands and this is the only case yet found.
The reasoning in that case is not satisfactory.   It is put
first on the ground that such is the meaning of the statute;
secondly, that the debtor has an inchoate interest in his
future acquisitions on which the judgment acts and is a lien,
and likens it to the inchoate interest of a married woman
in the future acquired lands of her husband during cover-
ture.   We fail to see any similarity.   The proposition loses
sight of the true reason why dower was allowed in such
lands.   It is true that the marriage contract is the initial
point of her rights, but the reason is the "sustenance of
the wife, and the nurture and education of the younger
children," and it was extended to future acquired lands in
order to prevent the husband from defeating the object of
the rule, which has no application to *The Code*, Section 435,
as to judgments docketed before the estate falls in.   The
authorities quoted in the Oregon case do not support the
conclusion, and are cited only to call attention to some sup-
posed analogies under the former system.   The contention
in *Kollock* v. *Jackson*, 5 Ga., 153, was not between judgment
creditors but between a judgment and a factor's lien for
goods and advances made to raise a crop, which factor's
lien arose subsequent to the rendition of the judgment, and
it was held that the judgment had preference because of
their act of Assembly of 1799 which declared that "all
property of the party against whom a verdict shall be
entered shall be bound from the signing of the first judg-
ment."   This decision does not fit the present question.
Our conclusion is that the proceeds of the land should be
applied to the judgments pro rata.

Affirmed.

CLARK, J. (dissenting): The distinction must be clearly
kept in mind between the *lien*, which is the right accruing

as between the judgment creditor and debtor, to subject the property, and the *priority* in the application of the proceeds of a sale under execution, which is the apportionment of the rights of judgment creditors among themselves.

The manner of acquiring the *lien* as to real estate has been changed by statute. The apportionment of the proceeds of sale according to priority has never been affected by statute and, as the courts possess no legislative power, the law as to priorities among execution and judgment creditors necessarily remains as it has been uniformly recognized for an uncounted number of years.

Prior to the adoption of *The Code* there was no *lien* on real property till the levy of an execution (as is still the case as to personal property) and if there were two or more executions in the hands of the Sheriff, the priority in the application of the proceeds of the sale belonged to the execution of the oldest original teste whose chain had been kept up by a successive issue of executions from each succeeding term. The same rule applied as to personal property. It made no difference when the debtor acquired either species of property, whether before or after judgment. There was no *lien* as to either species of property till a levy, but whenever the lien was obtained by a levy the *priority* in the application of the proceeds of sale went to the oldest execution whose chain had been kept up unbroken.

*The Code*, Section 435, provides that the docketing a judgment shall make it "a *lien* on the real property, in the county where the same is docketed, of every person against whom any such judgment shall be rendered, and which he may have at the time of the docketing thereof in the county in which such real property is situated, or *which he shall acquire at any time thereafter*, for ten years from the date of the rendition of the judgment." It will be

noted that this statute only changes the mode of acquiring liens against the debtor's realty and does not purport to change the long settled and well recognized principle that though the liens may have been acquired, *eo instanti,* by a levy of several executions at once, (or, as in this case by the acquisition of property subsequent to docketing of the judgments) the *priority* among the creditors, in the application of the proceeds, goes to the oldest judgments in the order of their seniority. As the statute has not changed this the courts have no power to do so. This Section (435) merely does away with the necessity and useless expense of issuing execution from each successive term by making the docketing a *lien* on all the judgment debtor's realty which he has, or may subsequently acquire, for ten years in the county where such judgment is docketed. *Sawyer* v. *Sawyer,* 93 N. C., 321.

The statute gives no indication of a disposition to put the diligent creditors, who hold the oldest judgments, in any worse condition than formerly. This statute (*The Code,* 435) was indeed for their ease, by relieving them of the necessity of issuing a chain of successive executions to maintain their priority, and it is accordingly careful to make such judgments a lien also on all real property which the judgment debtor *shall thereafter acquire.* This view is sustained by a well considered opinion in *Creighton* v. *Leeds,* 9 Oregon, 215, in which State the statute is almost identical with ours, and *Kollock* v. *Jackson,* 5 Ga., 153; 8 Am. & Eng. Enc., 988. In the Oregon case, just cited, the Court say (irrespective of the additional fact that with us the law of applying the proceeds to the judgments according to seniority has not been changed) that by the words of their statute giving a lien on subsequently acquired property (using the same words as our statute), "there is an inchoate right of lien—a remedy for the satisfaction of

claims against the debtor—which confers the power of relating back," so that when the liens attach to subsequently acquired property the proceeds, upon being brought *in custodia legis* by execution sale, are applied according to the seniority of docketing.

Indeed, the exact point at issue has been recognized as settled in *Titman* v. *Rhyne*, 89 N. C., 64 (on p. 67,) where the Court say, "The judgment of Wright became a lien on all the lands of Linebarger, which he owned in that county at the date of the docketing, *or at any time within ten years thereafter*, and no subsequent lien would displace it; nor would any sale under execution, issued upon a *judgment docketed subsequently to it*, operate to discharge it, or pass the title to the land, except subject to it *as a prior lien*."

AVERY, J.: I concur in the above dissenting opinion.