## HOLT et al. v. ALBERT PICK & CO.

Circuit Court of Appeals, Fourth Circuit.
April 10, 1928.

No. 2666.

1. **Chattel mortgages ⊕194—Agreement to conceal lien after giving possession of property to buyer is repugnant to both law and equity.**

An agreement between seller and buyer to conceal the existence of a lien on property after giving possession of property to buyer, with its attendant inducement to giving credit to buyer by innocent third parties, is repugnant to both law and equity.

2. **Chattel mortgages ⊕226—Individual's transfer of property to corporation operated as between parties to make corporation principal debtor as to mortgaged property.**

Transfer of property from individual to corporation, in consideration of stock in company and assumption by corporation of liabilities of individual, *held*, as respected property covered by chattel mortgage, to have substituted corporation for individual as between immediate parties, and corporation became principal debtor under mortgage debt, and in effect the mortgagor in possession.

3. **Bankruptcy ⊕184(2⅛)—Seller, agreeing not to record mortgage, after bankruptcy of corporation to whom property was subsequently conveyed, cannot recover property as against trustees (C. S. N. C. § 3311).**

Where seller of hotel furniture agreed not to record mortgage in accordance with C. S. N. C. § 3311, in order that mortgagor's credit should not be injured, such property cannot be recovered by seller as against trustees in bankruptcy, of corporation, to which it was subsequently conveyed.

4. **Bankruptcy ⊕184(2⅛)—Transfer of property covered by chattel mortgage to corporation did not render unnecessary registration of mortgage (C. S. N. C. § 3311).**

Transfer of property covered by unrecorded chattel mortgage to corporation in exchange for stock *held* not to have rendered unnecessary the registration of mortgage pursuant to C. S. N. C. § 3311, as respected right of mortgagee to recover property after corporation's bankruptcy.

5. **Bankruptcy ⊕184(2⅛)—Chattel mortgage, unrecorded until few days before bankruptcy of corporation to whom property was conveyed by mortgagor, held of no effect as against trustees (Bankr. Act, § 47[a], as amended by Act June 25, 1910, § 8 [11 USCA § 75]).**

Where chattel mortgage covering hotel furniture subsequently conveyed to corporation was not registered until a few days before bankruptcy of corporation, and then was not properly registered, it was of no effect as against trustees in bankruptcy having, under Bankruptcy Act, § 47(a), as amended by Act June 25, 1910, § 8 (11 USCA § 75), all rights of creditor holding lien.

6. **Bankruptcy ⊕184(2⅛)—Mortgagee, agreeing not to record mortgage, was prevented under doctrine of estoppel from asserting priority as against bankrupt's creditors or trustees.**

Where seller of property agreed at time of sale not to record chattel mortgage securing part of purchase price, and corporation to whom property was subsequently conveyed thereafter became bankrupt, seller was prevented by doctrine of estoppel from asserting any priority as against bankrupt's creditors, or trustees representing them.

7. **Liens ⊕16—Person, inducing another to act on belief that lien does not exist, is estopped to assert lien.**

A person is estopped to assert lien, where he has induced another to act on the belief that the lien does not exist, and the latter will be prejudiced by its enforcement.

Appeal from the District Court of the United States for the Western District of North Carolina, at Statesville, in Bankruptcy; Edwin Y. Webb, Judge.

In the matter of the bankruptcy of the Somers Hotel System, Incorporated. Application by Albert Pick & Co. to require W. K. Holt and others, trustees in bankruptcy, to turn over certain property. Decree for petitioner, and the trustees appeal. Reversed.

William S. Coulter, of Burlington, N. C., and William H. Bobbitt, of Charlotte, N. C., (A. H. Price and Hayden Clement, both of Salisbury, N. C., on the brief), for appellants.

F. P. Hobgood, Jr., of Greensboro, N. C., and Samuel E. Hirsch, of Chicago, Ill. (William Ruger and J. Robert Cohler, both of Chicago, Ill., on the brief), for appellee.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge. In March, 1925, one J. F. Somers, a resident of Salisbury, Rowan county, N. C., began negotiations with appellee, Albert Pick & Co., an Illinois corporation doing business in Chicago, for the purchase of hotel furniture and equipment to the amount of $43,614.63. The sale was made, and on June 1, 1925, Somers, having paid the corporation $14,538.20, executed a chattel mortgage to secure 18 notes, dated May 7, 1925, signed by Somers, and payable monthly to the company, for the balance of the purchase price. Seventeen of these notes were for $1,200 each, and the last one was for $8,676.43, and their total was $29,076.43.

The company's manager promised Somers that he would not record the mortgage as long as the payments were made promptly.

The property purchased was shipped to Somers and placed in the Alamance Hotel, at Burlington, Alamance county, N. C., a new hotel, which was first opened for business on July 22, 1925. On June 24, 1925, Somers transferred to a North Carolina corporation, known as the Somers Hotel System, Incorporated, with principal office and place of business at Salisbury, N. C., leases on the Alamance Hotel and the Central Hotel of Charlotte, N. C., together with all the furniture and equipment therein, including the furnishings and equipment purchased from Albert Pick & Co.

Of the 750 shares of the common stock of the Somers Hotel System, Incorporated, J. F. Somers held 740 shares, his son, W. F. Somers, held 5 shares given him by his father, and E. B. Denny, attorney for J. F. Somers, held 5 shares given him for legal services rendered. These three were the sole incorporators and directors of the company. The shares held by J. F. Somers were given him in consideration of the transfer of the leases and property. The Somers Hotel System, Incorporated, by resolutions of its directors and stockholders, ratified the transaction and agreed to assume all liabilities of the two hotels involved, but no mention was made in the resolutions of the chattel mortgage given the Albert Pick & Co.

The Somers Hotel System, Incorporated, took over the leases and furnishings and equipment of the two hotels, and operated them until June 4, 1926, when a receiver was appointed for the corporation, and on June 16, 1926, on application of three of its creditors, the corporation was adjudicated a bankrupt. At the time of the appointment of the receiver, the indebtedness of the company approximated $90,000. Subsequent to its incorporation, and prior to the appointment of the receiver, the Somers Hotel System Company had sold preferred stock to the amount of $3,500, and had made up and exhibited to certain of its creditors statements which included as assets the furnishings and equipment in the Hotel Alamance, and in which the chattel mortgage given to Albert Pick & Co. was not mentioned. The Pick & Co. debt was only included under the item "bills payable."

No effort was ever made by Albert Pick & Co. to record the chattel mortgage given them until June 2, 1926, when the mortgage was filed for registration in Alamance county, which was not the county in which J. F. Somers resided, nor was it the county in which the bankrupt had its office and principal place of business. None of the notes se-

cured by said mortgage was ever paid. The Albert Pick & Co. filed its petition in the bankruptcy proceedings, praying that W. K. Holt, J. B. McCoy, and David A. Rendleman, who had been appointed trustees of Somers Hotel System, Incorporated, be required to turn over to it the property covered by said mortgage.

On August 31, 1926, the matter was referred to a special master to hear the matters arising on the petition and report his findings of fact and conclusions of law. On November 8, 1926, the report of the special master was filed, holding against the petitioner and for the trustees. On June 7, 1927, the judge of the District Court of the United States for the Western District of North Carolina, on a hearing on exceptions to the special master's report, sustained the exceptions, overruled and set aside the report, and entered a decree, giving the Albert Pick & Co. possession of the property petitioned for, from which decree this appeal was taken.

There is no conflict in the evidence, and J. F. Somers was the only witness introduced by appellee. Several witnesses testified for the trustees, appellants. Section 3311 of the Consolidated Statutes of North Carolina is as follows:

"3311. No deed of trust or mortgage for real or personal estate shall be valid at law to pass any property as against creditors or purchasers for a valuable consideration from the donor, bargainor or mortgagor, but from the registration of such deed of trust or mortgage in the county where the land lies; or in case of personal estate, where the donor, bargainor or mortgagor. resides."

[1] Had the appellee recorded his chattel mortgage in accordance with the provisions of this statute, none of the questions here presented would have arisen, but this was not done. It seems clear from the evidence that the failure to record the mortgage resulted from the request of J. F. Somers to the appellee's general manager not to do so, and was for the purpose of not injuring Somers' credit. An agreement to conceal the existence of a lien of this character, while giving possession of the property to the vendee, with its attendant inducement to the giving of credit to the vendee by innocent third parties, is repugnant to both law and equity.

The question is raised as to whether or not the transfer from Somers to the Somers Hotel System, Incorporated, constituted a sale, and whether the Hotel System, Incorporated, was a purchaser for valuable consideration. The property covered by the chattel mortgage was conveyed to the Hotel

Company for the consideration of stock in the company, issued to J. F. Somers. An additional consideration was the assumption by the Hotel Company of the liabilities of Somers in connection with the two hotels in question.

[2] We are of the opinion that, no matter what the effect of this transfer was, as between the immediate parties (that is, Albert Pick & Co., J. F. Somers, and Somers Hotel System, Incorporated), as a result of the transaction, the Hotel Company stepped into Somers' place, and became the principal debtor under the mortgage debt, and became in effect the mortgagor in possession with respect to the mortgaged property. Cobb v. Interstate Mortgage Corp. (C. C. A.) 20 F. (2d) 786; 5 R. C. L. p. 443, note 1; McCown v. Schrimpf, 21 Tex. 22, 73 Am. Dec. 221; 11 C. J. 632.

As far as the third party creditors, without notice as to the conditions surrounding the purchase and transfer of the property and without notice as to the chattel mortgage, are concerned, the Somers Hotel System, Incorporated, was in possession of the property, was apparently the owner of the property, and was entitled to credit on the strength of such ownership. Whatever equities may arise out of the mortgage transaction are confined in their effect to the immediate parties, and "could not operate to estop the trustee in bankruptcy, representative of the interests of creditors for whose protection the recording act was passed." Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841.

[3] J. F. Somers himself testified that the general manager of Albert Pick & Co. agreed not to record the mortgage as long as the notes given for the deferred payment were paid promptly. Several witnesses testified that the general manager of Albert Pick & Co. stated that he had agreed not to record the mortgage, and one witness testified positively that the general manager of Albert Pick & Co. stated that this was in order not to injure the credit of J. F. Somers. These statements were not denied. The general manager, who was charged with making them, was not put upon the stand, and the inevitable conclusion is that they were true, and for the purposes of this opinion they must be taken as true. That being the case, Albert Pick & Co. entered into an agreement with J. F. Somers that in effect permitted him or his assigns to hold himself out to the world as the owner and possessor, without lien or incumbrance, of the property in question. In entering upon such a course, and in per-

mitting its lien to remain a secret one, the appellee took its chances, and should not be heard to complain, if it now suffers a loss, that is the natural and expected consequence of its own action. Secret liens have always been repugnant to the law.

The attitude of Congress toward secret liens is shown by the report of the House Judiciary Committee, accompanying the amendment to section 60b of the Bankruptcy Act made in 1910 (11 USCA § 96). In this report it was said: "The object of this amendment is further to protect against the evil of secret liens, against which evil this same section was amended in 1903, but in such an unfortunate way as not effectually to prevent such liens." For an able discussion of this question of unrecorded liens, as affecting rights of trustees in bankruptcy, see Bunch v. Maloney (C. C. A.) 233 F. 970.

[4] It is contended on behalf of the appellee that the transfer of the property by J. F. Somers to the Somers Hotel System, Incorporated, rendered unnecessary the registration of the mortgage, as J. F. Somers was practically the sole owner of the Somers Hotel System, Incorporated, company. This position is inconsistent with the position, also taken by appellee, that the registration statute only protected as to creditors of J. F. Somers himself, and, as the trustees represented only the creditors of the Hotel Company, their rights were subordinate to the rights of the appellee, and is without force.

The unrecorded mortgage certainly could not have gained in validity by the transfer from J. F. Somers to the bankrupt. To hold that to be the case would result in the opening up of a wide avenue for fraud, against which there would be no protection. Vendor and vendee could agree, as in this case, that the mortgage should not be recorded, and the vendee could organize a corporation, of which he was sole owner of all the stock, transfer the mortgaged property to the corporation, obtain credit for the corporation by virtue of the possession and apparently unincumbered ownership of the property, and defeat the claim of bona fide creditors by the assertion of a secret unrecorded lien. Such a situation would be contrary to every principal of justice.

[5] The chattel mortgage held by the appellee is of no validity against purchasers for value or creditors unless registered, and as in this case the mortgage was not attempted to be registered until a few days before the bankruptcy of the Somers Hotel System, Incorporated, and never has been prop-

erly registered, it can be of no effect as against the appellants. Robinson v. Willoughby, 70 N. C. 363; Hooker v. Nichols, 116 N. C. 160, 21 S. E. 207; U. S. v. Hiawassee Lumber Co. (C. C. A.) 202 F. 35; Brigman v. Covington (C. C. A.) 219 F. 500.

The trustees in this case, under section 47a of the Bankruptcy Act as amended in 1910 (11 USCA § 75), are vested with all the rights of a creditor holding a lien, and as against such rights an unrecorded chattel mortgage is certainly not valid.

That unregistered chattel mortgages shall be void as against "creditors" is the language of the North Carolina statute. But, even where the language used is "creditors of the mortgagor," it has been held that, where the mortgagee permitted a new owner to retain the possession of the goods and thereby obtain credit, the new owner becomes within the meaning of the statute, a mortgagor. Fidelity Trust Co. v. Staten Island Clay Co. et al., 70 N. J. Eq. 558, 62 A. 441; In re Rambler Cafeteria, Inc. (C. C. A.) 9 F.(2d) 861.

A number of authorities relied on by appellee deal with the question of conditional sales contracts and mortgages that antedated the amendment of 1910 to the Bankruptcy Act, and are not in point.

The action of appellee in allowing a number of the notes for deferred payments to become long past due without any action whatever cannot be condoned. Not one of the deferred payment notes was ever paid.

[6] Where there is a registration statute, and a creditor withholds from recordation a chattel mortgage, pursuant to an agreement with ,the mortgagor, in order to aid in giving the mortgagor a fictitious credit through possession of the property sold, and, as in this case, only seeks to record the mortgage when the mortgagor or his successor to the possession of the property in question is found to be in financial difficulties, the mortgagee has acted deliberately, and cannot be heard to assert an equitable lien against the property. The doctrine of estoppel prevents the assertion of any priority by the mortgagee as against creditors or trustees representing them. In this case Albert Pick & Co. chose their course, and cannot complain of the result as against creditors, whether they became creditors either before or after the execution of the mortgage. Bank v. Moore (C. C. A.) 247 F. 913; Bank v. Shackelford, 239 U. S. 81, 36 S. Ct. 17, 60 L. Ed. 158.

"Except for sinister purposes it is difficult to imagine why a party holding a mortgage on a stock of merchandise, when the statute provides for its registration, should wish to secrete the mortgage, carry it in his pocket, instead of putting it on record, thus giving notice to the commercial world of the financial condition of the mortgagor. The well-earned character of the state of North Carolina and of its native population for honesty, favoring a square deal, is in keeping with the law as decided * * * in Cheatham v. Hawkins, 76 N. C. 335," etc. Mitchell v. Mitchell (D. C.) 147 F. 280.

"A chattel mortgage given by a bankrupt on his stock of merchandise, and withheld from record for several months by the mortgagee under a tacit agreement to do so because of the effect which the record would have on the mortgagor's credit, is fraudulent and void both as to prior and subsequent creditors." In re Duggan (C. C. A.) 183 F. 405. See, also, Covington v. Brigman (D. C.) 210 F. 499.

[7] A person is estopped to assert a lien, where he has induced another to act upon the belief that the lien does not exist and the latter would be prejudiced by its enforcement. 37 C. J. 332; Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865.

We are of the opinion that the learned judge below was in error in reaching the conclusion that the chattel mortgage was a valid lien against the property in question, and prior and paramount to the claim of the trustees. On the contrary, we believe the conclusion reached by the special master that, as against the trustees, the mortgage was not a valid and subsisting lien, was correct.

The decree of the District Court is therefore reversed.