CHARLES E. LINKER, Administrator of the Estate of L. B. LINKER, Deceased, v. CHARLES E. LINKER, Individually, and Wife, BERTHA A. LINKER; MAE WIDENHOUSE and Husband, E. A. WIDENHOUSE; NANNIE LEE BARNHARDT and Husband, L. H. BARNHARDT; J. B. LINKER and Wife, JEWEL LINKER; PEARL LINKER HARRIS; ROBERT L. LINKER and Wife, FAY LINKER; HELEN G. RITCHIE and Husband, E. S. RITCHIE; REALTY PURCHASE CORPORATION; EFIRD'S DEPARTMENT STORE, INC.; C. F. LITTLE; SOUTHERN COTTON OIL COMPANY, a Corporation; BUCKEYE COTTON OIL COMPANY, a Corporation; W. A. NEWELL; E. L. MORRISON, Trading as E. L. MORRISON LUMBER COMPANY; MRS. LOU A. TEETER, Administratrix of the Estate of M. F. TEETER, Deceased, and C. S. McCURDY.

(Filed 13 April, 1938.)

**1. Executors and Administrators § 5: Descent and Distribution § 1—**

Upon the death of a person intestate his personal estate vests in his administrator and his lands descend to his heirs, subject to be sold only if the personalty is insufficient to pay debts of the estate, and the lands are not an asset of the estate until sold and the proceeds received by the administrator.

**2. Executors and Administrators § 13a—**

An administrator may sell lands of the estate only if the personalty is insufficient to pay debts of the estate, C. S., 74.

**3. Executors and Administrators § 13d—**

Where land is sold to make assets to pay debts of the estate, so much of the proceeds of sale as is necessary to pay debts of the estate, is to be treated as personal assets, C. S., 55, but the surplus goes to the heirs as realty in the same manner as if the sale had not been had. C. S., 56.

**4. Same: Descent and Distribution § 12—Administrator may not hold heir's share in surplus from sale to make assets to pay heir's debt to the estate.**

Where lands are sold to make assets to pay debts, and a surplus remains in the hands of the administrator, the administrator is not entitled to hold the share of an heir in the fund to pay a debt, which is not an advancement, due the estate by the heir, since the heir's right to his share in the surplus is the same as though the land had not been sold. C. S., 56.

**5. Descent and Distribution § 14—**

When an heir is entitled to a share in the surplus remaining after sale of lands to make assets to pay debts, judgment creditors of the heir whose judgments were docketed prior to the death of the ancestor are entitled to pro rata payment out of the heir's share.

**6. Judgments § 19d—Judgment creditors are entitled to share pro rata in property acquired by debtor subsequent to docketing of judgments.**

When an heir acquires land or property to be treated as realty subsequent to the docketing of the several judgments against him, the judgment creditors are not entitled to priority in accordance with the date of the docketing of their respective judgments, but are entitled only to application of the property to the judgments pro rata. C. S., 614.

APPEAL by plaintiff and by defendant, Mrs. Lou A. Teeter, Administratrix, from *Rousseau, J.,* at October Term, 1937, of Cabarrus.

Special proceeding to sell land to make assets to pay debts, in which plaintiff and judgment creditors of one of the heirs of intestate controvert disposition of such heir's share of surplus funds.

The parties agree to facts substantially as follows: Charles E. Linker is duly qualified as administrator of L. B. Linker, deceased, who died intestate, possessed and seized of both personal and real property in Cabarrus County, and leaving his son, J. B. Linker, and six others as his only distributees and heirs at law. On the date of the death of L. B. Linker, his son, J. B. Linker, was indebted to him in the sum of $5,199.07—an "unsecured indebtedness, and not advancements." On said date there were judgments against J. B. Linker in favor of M. F. Teeter, W. A. Newell, Buckeye Cotton Oil Co., Standard Oil Co., Southern Cotton Oil Co., C. F. Little, and Efird's Department Store, respectively, in various amounts, duly docketed in Cabarrus County in priority of time in the order named—that of M. F. Teeter having been docketed first. M. F. Teeter is now dead and Mrs. Lou A. Teeter is the administratrix of his estate. There being an insufficiency of personal property to pay the debts of the estate of L. B. Linker, the plaintiff instituted this special proceeding to sell the land of which L. B. Linker died seized in Cabarrus County to make assets to pay debts, and same was duly sold. After applying the proceeds to the payment of the debts there remained a surplus of $463.47 for each of the seven heirs at law. With reference to the J. B. Linker share, it being agreed that he is a nonresident, the

parties contend: (1) Plaintiff, as administrator of L. B. Linker, contends that he has and should exercise the right to retain that share to apply on the indebtedness due by J. B. Linker to his father, the intestate; (2) Mrs. Lou A. Teeter, administratrix of M. F. Teeter, deceased, contends that the whole amount should be applied to the judgment of M. F. Teeter against J. B. Linker, and (3) W. A. Newell and the other judgment creditors contend that the whole amount should be distributed pro rata among and in proportion to the amounts due to all judgment creditors whose judgments were docketed against J. B. Linker at the date of the death of L. B. Linker, irrespective of priorities in date of docketing.

From judgment directing the distribution of the fund in accordance with the third contention the plaintiff, administrator of L. B. Linker, deceased, and the defendant, Mrs. Lou A. Teeter, administratrix of M. F. Teeter, deceased, each appeals to the Supreme Court and assigns error.

*Armfield, Sherrin & Barnhardt for plaintiff, appellant.*
*W. S. Bogle for Mrs. Lou A. Teeter, defendant, appellant.*
*H. S. Williams for W. A. Newell, defendant, appellee.*

WINBORNE, J. Upon the facts as stated these questions arise:

1. Where there is a surplus of proceeds of the sale of land to make assets to pay debts of the estate of an intestate after such debts have been paid, has the administrator of the intestate the right to retain and apply the share of an heir in payment of an indebtedness, not an advancement, due by such heir to the intestate when judgment creditors of such heir hold judgments duly docketed in the county where the land is situated at the date of the death of the intestate?

2. If not, is the judgment creditor whose judgment was first docketed entitled to be paid in full before such other judgment creditors?

The answer to each is "No."

Upon the death of an intestate his personal estate vests in the administrator, and the lands descend to his heirs, subject to be sold, if necessary, to make assets to pay debts of the intestate. *Price v. Askins,* 212 N. C., 583, 194 S. E., 284; *Harris v. Russell,* 124 N. C., 547, 32 S. E., 958; *Avery v. Guy,* 202 N. C., 152, 162 S. E., 217.

"A personal representative has no control of the freehold estate of the deceased unless it is vested in him by will, or where there is a deficiency of personal assets, and he obtains a license to sell real estate for the payments of debts. . . . The heir of the testator is not divested of the estate which the law casts upon him by any power or trust until it is executed." *Floyd v. Herring,* 64 N. C., 409; *Speed v. Perry,* 167 N. C., 122, 83 S. E., 176, and cases cited.

12—213

LINKER *v.* LINKER.

Land is not an asset until it is sold and the proceeds received by the personal representative. *Fike v. Green,* 64 N. C., 665; *Edenton v. Wool,* 65 N. C., 379; *Hawkins v. Carpenter,* 88 N. C., 403; *Wilson v. Bynum,* 92 N. C., 718.

Land of which an intestate dies seized may only be sold when the personal assets of the intestate are insufficient to pay his debts. C. S., 74; *Avery v. Guy, supra.*

C. S., 55, provides that "all proceeds arising from the sale of real property for the payment of debts . . . shall be deemed personal assets in the hands of the executor, administrator, or collector, and applied as though the same were the proceeds of personal assets."

But under C. S., 56, it is provided that "all proceeds from the sale of real estate . . . which may not be necessary to pay debts and charges of administration shall, notwithstanding, be considered real assets, and as such be paid by the executor, administrator, or collector to such persons as would have been entitled to the land had it not been sold."

Applying these principles and statutes to the facts of the present case, an undivided interest in the land of L. B. Linker, immediately upon his death, vests in J. B. Linker, subject to be divested only in the event that the personal assets of the estate be insufficient to pay the debts of the estate, and then only to the extent that it is necessary to use the proceeds of sale of it to pay said debts. The proceeds passed into the hands of the administrator for that purpose only, and only to that extent. Any surplus then reverts to the status of real estate as if the land had not been sold. In *Lafferty v. Young,* 125 N. C., 296, 34 S. E., 444, it is said: "Being the proceeds of realty, the law for the purpose of indicating the channel in which it shall go, by a fiction stamps it with the character of realty."

Plaintiff relies mainly upon the cases of *Wallston v. Braswell,* 54 N. C., 137; *Balsley v. Balsley,* 116 N. C., 472; *Nicholson v. Serrill,* 191 N. C., 96, 131 S. E., 377, and decisions in other jurisdictions. A careful consideration of them shows each to be distinguishable from the factual situation here involved.

A judgment "is a lien on the real property in the county where the same is docketed of every person against whom any such judgment is rendered, and which he has at the time of the docketing thereof in the county in which such real property is situated or which he acquires at any time thereafter, for ten years from the date of the rendition of the judgment." C. S., 614. In the present case it is not contended that any of the judgments are affected by the statute of limitations.

As to priority of the lien of the docketed judgments, in *Moore v. Jordan,* 117 N. C., 86, it is said: "The defendant Lewis contends that,

as was the case under our former system, the lien when it attaches re-lates back to the day when the judgment was docketed. . . . Neither the court nor counsel have been able to find any decided cases on this question in any of the states except one in Oregon. . . . We are, therefore, to construe our statute, The Code, sec. 435 (C. S., 614), according to its meaning and on general principles of reasoning. . . . There seems to be no reason why priority should be allowed when the title to the land and the several liens occur at the same mo-ment. There is no equitable ground on which to place it, because one judgment debt in the eye of the law is as just as any other, and there is no natural justice in the proposition. . . . Our conclusion is that the proceeds of the land should be applied to the judgments pro rata." *Johnson v. Leavitt,* 188 N. C., 682, 125 S. E., 490.

The administrator will pay the cost out of the fund.

The judgment below is

Affirmed.