COASTAL SALES CO., A CORPORATION, v. ELIZABETH C. WESTON, ADMINISTRATRIX OF F. E. WESTON, DECEASED.

(Filed 20 March, 1957.)

**1. Chattel Mortgages and Conditional Sales § 7b—**

To embrace after-acquired property, a mortgage or deed of trust must be so worded as to show, expressly or by implication, the mortgagor's unmistakable intention to convey such property.

**2. Chattel Mortgages and Conditional Sales § 4: Contracts § 8—**

The fact that several instruments between the same parties bear the same date is sufficient to support a finding that they were executed at the same time, and when their terms disclose their interrelation as parts of a single transaction, they should be construed together.

**3. Chattel Mortgages and Conditional Sales § 7b—**

The documents constituting a contract and chattel mortgage on lumber, sued on in this case, *are held* to disclose a clear intention that plaintiff's lien to the extent of advancements made by him was to attach to all lumber as processed by the other party during the life of the contract, and therefore covered lumber processed by the other party under the contract subsequent to the execution of the instruments.

**4. Registration § 4—**

Registration does not protect every creditor against unrecorded mortgages, but only purchasers for a valuable consideration from the mortgagor and creditors who have first fastened a lien upon the property in some manner sanctioned by law.

**5. Executors and Administrators § 8—**

The personal representative takes only that title which the deceased had in the property at the time of his death, and an unrecorded mortgage lien has the same status as against the personal representative that it had against the deceased, regardless of whether the estate is solvent or insolvent.

**6. Registration § 4—**

An unregistered instrument is valid as between the parties.

**7. Executors and Administrators § 15a—**

The rights of secured and unsecured creditors alike are fixed at the instant of intestate's death, and the circumstance of death cannot have the effect of fastening a lien upon property of the estate in favor of unsecured creditors.

**8. Executors and Administrators § 15h: Chattel Mortgages and Conditional Sales § 10c—**

At the time of intestate's death lumber owned by him was subject to the lien of an unrecorded mortgage on after-acquired property. The estate was insolvent. *Held:* The mortgagee has a lien on the property as against the administratrix superior to the claim of general creditors of the estate who had not fastened a lien upon the property at the time of intestate's death.

APPEAL by defendant from *Frizzelle, J.,* August Term, 1956, of MARTIN.

On 21 June, 1956, when F. E. Weston died, intestate, he had, stacked on his mill yard, approximately six hundred thousand feet of lumber. His principal indebtedness to plaintiff, evidenced by interest bearing promissory notes, was $24,551.07.

Plaintiff asserts that it has a lien on said lumber as security for said debt and seeks herein to enforce such lien.

The Weston estate is "hopelessly insolvent." Neither the validity nor amount of plaintiff's claim of debt is controverted. However, defendant, the administratrix, insists that plaintiff has no lien on said lumber.

Upon waiver of jury trial, G.S. 1-184, the evidence was heard by Judge Frizzelle, who, based on his findings of fact and conclusions of law, adjudged that plaintiff has a valid mortgage lien and a valid equitable lien on said lumber; and judgment was entered that defendant sell said lumber and pay to plaintiff from the proceeds of such sale the amount of its said claim ($24,551.07 plus interest), and that defendant pay the costs.

Defendant excepted and appealed, assigning errors.

*W. Bernard Allsbrook and Henry C. Bourne for plaintiff, appellee.*
*Peel & Peel for defendant, appellant.*

BOBBITT, J. Two questions confront us: 1. Did plaintiff, as between it and Weston, have a valid lien on said lumber? 2. If so, is plaintiff's lien enforceable against the administratrix of Weston's insolvent estate?

To answer the first question, it is necessary to consider three duly executed documents, all dated 23 February, 1956, Exhibits A, B and C.

Exhibit A is a comprehensive contract between plaintiff and Weston. It was *not* recorded. Its pertinent provisions, summarized, are these:

Weston was to produce, grade and stack lumber on his yard near Williamston, North Carolina. The lumber was to be manufactured under the direction of plaintiff. Plaintiff was to take "a bi-monthly inventory of all lumber on Weston's yard." Plaintiff had the right to go upon the premises to inspect Weston's records and to check the lumber on his yard. Plaintiff was constituted the *exclusive* sales agent for the lumber so produced. All sales were to be made by plaintiff in its name. The lumber was to be shipped from Weston's yard in plaintiff's name and as directed by it. Plaintiff was to send bills for the lumber so sold and shipped and make all collections.

It was agreed that, up to a maximum of $50,000.00, plaintiff would advance to Weston an amount equal to 55% of the market value of the lumber produced by Weston and stacked on his yard; provided, such advancements were to be made only on lumber "free from all liens or adverse claims of any nature whatever." It was agreed that, as the lumber was produced and stacked, successive advancements were to be made by plaintiff to Weston; and Weston's indebtedness to plaintiff therefor was to be evidenced by promissory notes.

It was agreed that Weston was "to pay the taxes on and to keep the lumber adequately insured against loss by fire or other casualty . . . with loss payable to the Coastal Sales Company and Frank E. Weston as their respective interests may appear." In the event Weston failed to do so, plaintiff was given the right to pay such taxes and insurance premiums and add the amount thereof to Weston's indebtedness to it.

It was agreed that Weston was "to keep up all leases as described in Deed of Trust of even date herewith." In the event Weston failed to do so, plaintiff was given the right to make the payments required to keep up said leases and add the amount thereof to Weston's indebtedness to it.

Whether evidenced by promissory notes or otherwise, it was agreed that Weston's indebtedness to plaintiff was to bear interest at the rate of 5½% per annum.

When lumber was sold, the purchase price received by plaintiff therefor was to be applied to plaintiff's commissions and to Weston's indebtedness to plaintiff as set forth in detail.

Exhibit A contains this paragraph: "15. To afford security for the Coastal Sales Company for the indebtedness to arise hereunder, the said Frank E. Weston shall execute, simultaneously with this Contract, a Deed of Trust on all machinery and equipment used by him in the operation of the lumber mill together with all lumber now at or upon the yards of the mill aforesaid, *and all other lumber produced or handled thereat as the natural product of the business of said mill during the life of this Contract.*"   (Italics added.)

Exhibit B, which *was* recorded, a contract between plaintiff and Weston, is an abbreviated form of Exhibit A. None of the provisions quoted above from Exhibit A appear in Exhibit B. Exhibit B contains no new matter. Exhibit B provided generally that plaintiff was exclusive sales agent for all lumber then at Weston's mill and "for all lumber produced or handled thereat during the life of this contract"; that plaintiff was to receive commissions on sales and was to make advancements to Weston "as stipulated in a separate agreement of even date herewith by and between the parties hereto"; and that "every part . . . (of said separate agreement) is incorporated herein by reference as fully as if set out herein in detail."

Exhibit C, which *was* recorded, is the deed of trust. It was executed and delivered by Weston to W. B. Allsbrook, Trustee.

Exhibit C recites that Weston "may hereafter become indebted" to plaintiff from time to time in various amounts up to but not exceeding $50,000.00 under the terms of their contract of even date, which indebtedness "will be evidenced by notes" of Weston to plaintiff; and that the deed of trust is to secure the payment of said indebtedness, "both that which now exists and that which will hereafter exist."

The property conveyed to W. B. Allsbrook, Trustee, was described as follows: (1) All of the right, title and interest of Weston in certain described leases; (2) certain described machinery, trucks and trailers; and (3) "All of the machinery, equipment and other personal property used by the said Frank E. Weston in connection with the manufacture of lumber and also all the lumber of every kind and description, including Pine, Hardwood and Cypress, located on the mill yard of the said Frank E. Weston, which mill yard is included in the Leases hereinabove described." Prior liens on described personal property aggregating $48,400.00 were excepted from Weston's warranty.

It was stipulated that Weston was to "take good care of all lumber herein conveyed"; and, if Weston failed to do so, plaintiff, at its option, had the right to declare the outstanding indebtedness immediately due and payable.

It was further stipulated that Weston "at all times hereafter . . . shall keep the lumber herein conveyed insured to the extent of the fair market value of same, the market value to be based on bi-monthly reports of inventories of stocks of lumber on hand, . . ." In the event Weston failed to do so, plaintiff was "at liberty to effectuate such insurance," and add the amount of the premiums paid by plaintiff "to the indebtedness hereby secured."

It was further stipulated that, if considered "reasonably proper" by plaintiff's counsel, Weston was to execute supplemental instruments "to give specific description to the property conveyed or to effectuate the full intent and meaning of this instrument."

Exhibit D, which was *not* recorded, is a contract dated 11 May, 1956, between plaintiff and Weston. It was agreed that plaintiff would make a "supplemental advance of ten ($10.00) dollars per M. board feet of 181 MBF of cypress lumber" located on Weston's yard and that Weston's debt to plaintiff therefor would be evidenced by notes and secured as provided in Exhibits A and C.

Based on production reports furnished by Weston, plaintiff made advancements to Weston; and Weston executed and delivered to plaintiff promissory notes for the amounts so advanced, all in accordance with Exhibits A and D. The admitted indebtedness of Weston to plaintiff in the amount of $24,551.07 plus interest is the balance due on these promissory notes. While not deemed material, the record does not disclose to what extent, if any, plaintiff's present claim is based on supplemental advancements under Exhibit D.

It is stipulated that when the three documents, Exhibits A, B and C, were executed, Weston "did not have and did not represent to have any lumber of any kind on the mill yard referred to in said agreements, and this fact was known to both parties." Too, it appears clear that when said three documents were executed, there existed no indebtedness of Weston to plaintiff on account of advancements.

The purport of the brief oral testimony is that the lumber produced by Weston was graded, stacked and inventoried in accordance with the provisions of Exhibit A; and that this was done under the supervision of plaintiff's employees.

To embrace after-acquired property, a mortgage or deed of trust must be so worded as to show, expressly or by implication, the mortgagor's unmistakable intention to convey such property. *Lumber Co. v. Lumber Co.*, 150 N.C. 282, 285, 63 S.E. 1047; *Bank v. Pearson*, 186 N.C. 609, 120 S.E. 210.

The three documents, Exhibits A, B and C, bear the same date, to wit, 23 February, 1956. It was permissible for the court to find that they were executed at the same time. *Sandlin v. Weaver*, 240 N.C. 703, 83 S.E. 2d 806. Moreover, the terms of these documents disclose their interrelation as parts of a single transaction.

When the three documents, Exhibits A, B and C, are construed together, as parts of one transaction, it is clear that the parties intended that plaintiff have a lien on the lumber produced and stacked on Weston's yard during the life of their contract. These questions arise: Did plaintiff have a valid mortgage lien, such as was upheld in *Bank v. Pearson, supra?* If not, did the plaintiff have an equitable lien, such as was upheld in *Garrison v. Vermont Mills*, 154 N.C. 1, 69 S.E. 743?

The parties intended that plaintiff have a mortgage lien on the lumber; and, if treated as an equitable lien, the basis therefor is that the provisions of the mortgage alone were not legally sufficient to effectuate

their real agreement. If then, on principles of equity, we effectuate their intention, the result reached is that the deed of trust, in respect of the lumber, had the status of a mortgage lien thereon.

The validity of the lien, as between plaintiff and Weston, was not impaired by the failure to record Exhibit A. ". . . as between the parties a mortgage or deed is valid without registration." *McBrayer v. Harrill,* 152 N.C. 712, 68 S.E. 204.

G.S. 47-20 does not protect every creditor against unrecorded mortgages. It protects only (1) purchasers for a valuable consideration from the mortgagor, and (2) creditors who have "first fastened a lien upon it (the property) in some manner sanctioned by law." *Finance Corp. v. Hodges,* 230 N.C. 580, 55 S.E. 2d 201.

Ignoring Exhibit A, which was not recorded, the question arises: Were the *recorded* documents, Exhibits B and C, sufficient to give notice to third parties of plaintiff's lien? When these recorded documents are considered together, the factual situation is similar, although not identical, with that considered in *Bank v. Pearson, supra,* where, as against the purchaser at an execution sale pursuant to judgment against the mortgagor, the mortgage was upheld as to after-acquired property. But, for the reasons stated below, we need not decide that question.

*McBrayer v. Harrill, supra,* is direct authority for the proposition that the administratrix "stands in the shoes" of Weston; and that, as between plaintiff and the administratrix, an unrecorded mortgage lien has the same status and validity it had between plaintiff and Weston. Appellant challenges the soundness of that decision.

In order of payment by an administrator, the first class consists of "Debts which by law have a specific lien on property to an amount not exceeding the value of such property." G.S. 28-105. However, this statutory provision does not bear upon whether an unrecorded chattel mortgage, valid as against the intestate, is to like extent valid against his estate.

Appellant contends that *Williams v. Jones,* 95 N.C. 504, and *Hinkle v. Greene,* 125 N.C. 489, 34 S.E. 554, cited in *McBrayer v. Harrill, supra.* do not support the decision. The two cited cases involved chattels allotted to the widow of an intestate as part of her year's allowance. G.S. 30-15, *et seq.* It was held that the widow took such chattels subject to her husband's unrecorded mortgage thereon. This statement is noteworthy: "She does not take under the administrator, for she may have her 'year's support' assigned to her before any administration on her husband's estate. The Code, sec. 2127. She takes the allowance, under and by virtue of the statute, out of the personal estate of her husband. The statute, it is true, gives her a right to her 'year's support,' against all general creditors, but no better title to the prop-

erty assigned her than her husband had." *Williams v. Jones, supra.* It may be conceded that *Williams v. Jones, supra,* and *Hinkle v. Greene, supra,* are distinguishable to this extent: The title to the personal estate of an intestate, except the portion thereof allotted as allowances for a year's support, vests in the administrator. *In re Estate of Galloway,* 229 N.C. 547, 50 S.E. 2d 563; *Snipes v. Estates Administration, Inc.,* 223 N.C. 777, 28 S.E. 2d 495; *Linker v. Linker,* 213 N.C. 351, 196 S.E. 329; *Price v. Askins,* 212 N.C. 583, 194 S.E. 284. Even so, the title that passes to and vests in the widow and administrator, respectively, is the title of the intestate.

If an estate is solvent, an administrator cannot, for the benefit of heirs or distributees, attack a mortgage, valid as between the parties, on the ground that it was not recorded during the life of the intestate. As to this proposition, there is no conflict of authority. But there is a conflict of authority as to whether an unrecorded mortgage is void as against the administrator of an insolvent estate. 33 C.J.S., Executors and Administrators sec. 301; 21 Am. Jur., Executors and Administrators sec. 422; Annotation: 91 A.L.R. 299, 304.

When the registration act of each state is considered, it is difficult to determine what is the majority view. Be that as it may, *Blackman v. Baxter,* 125 Iowa 118, 100 N.W. 75 (1904), a leading case holding that such unrecorded mortgage is void, makes it clear that under the Iowa statute only creditors who had fastened a lien upon the property itself were protected against an unrecorded mortgage. The opinion for the Court (there was a dissenting opinion) indicates these bases for the decision: 1. The title of the administrator, regardless of when appointed, relates back to the instant of the mortgagor's death. 2. Thereafter, the unsecured creditors are powerless to obtain relief directly, that is, to fasten a lien upon the intestate's property, but must of necessity work out the collection of their claims through the administrator.

Yet, the rights of secured and unsecured creditors alike are fixed at the instant of the intestate's death. While unsecured creditors can take no action thereafter to fasten a lien on the intestate's property, it is equally true that the recording of a mortgage subsequent to the death of the intestate cannot improve the status of the mortgagee. During the life of the intestate, the unrecorded mortgage is valid against all creditors except such as may fasten a lien on his property. Since their respective rights are fixed as of the date of the intestate's death, we cannot accept the view that the mere circumstance of death should be held to convert unsecured creditors into creditors who have fastened a lien upon the property. The better view, in our opinion, is that the title that passes to the administrator in respect of the intestate's personal estate is precisely the title vested in the intestate immediately

prior to his death; and that, as expressed in *McBrayer v. Harrill, supra,* the administrator "stands in the shoes" of the intestate.

In Jones, Chattel Mortgages and Conditional Sales, Vol. 1, Bowers Edition (1933), sec. 240, the author, referring to *Blackman v. Baxter, supra,* and similar decisions, rejects the rule adopted therein. Thereupon he sets forth the rule adopted in *McBrayer v. Harrill, supra,* and the reasons therefor, as follows:

". . . The mortgagor's death gives no specific lien upon his property in favor of a general creditor. The property passes to the personal representative as the mortgagor left it. One who was a mere general creditor before the death remains such after it. His position with respect to other creditors remains unchanged. He and they have the same right, through the intervention of an administrator, to subject to the payment of their debts, if necessary, all the property of their debtor which has passed to his heirs, devisees, or legatees. This right, which constitutes the only lien which a general creditor has upon the estate of his deceased debtor, is acquired by no act of diligence on the part of the creditor; it arises from no act of the debtor, but from the laws that make the property he has at the time of his death subject to the payment of his debts. This right of the general creditor is limited to the property that passes; and it is limited also to the property in the condition in which it passes, subject to the encumbrances and liens placed upon it by the debtor."

In *McBrayer v. Harrill, supra, Clark, C. J.,* cited Jones on Chattel Mortgages, sec. 239, where the author, after referring to the conflict of authority, set forth what he considered the correct rule in these words: "An unfiled or unrecorded mortgage is valid against the executor or administrator of the mortgagor in the same way that it is valid against the mortgagor himself . . . Neither the heir in the one case, nor the administrator in the other, is a third person, but represents the intestate, and has no better title than he had." Thus it appears that this Court, when *McBrayer v. Harrill, supra,* was decided, was fully aware of the divergent lines of authority.

Our decisions are to the effect that the trustee under a deed of assignment for the benefit of creditors is a purchaser for a valuable consideration within the meaning of G.S. 47-20; and that, upon adjudication of insolvency and the appointment of a receiver, the unsecured creditors, then represented by the receiver, are deemed to have fastened a lien on the insolvent's property. *Finance Corp. v. Hodges, supra,* and *Investment Co. v. Chemicals Laboratory,* 233 N.C. 294, 63 S.E. 2d 637, and cases cited.

There is no contention here that the administratrix is a purchaser for a valuable consideration. Appellant insists that the decisions in the receivership cases, by analogy, support her contention. But in the

basic case relating to receiverships, the ground of decision is that the unsecured creditors by *judicial process, i.e.*, the receivership proceedings, fasten a lien on the insolvent's property. *Observer Co. v. Little*, 175 N.C. 42, 94 S.E. 526. It is noted further: If the receivership proceeding is initiated by the debtor, it is in effect a voluntary assignment for the benefit of creditors. If the receivership proceeding is initiated by creditors, the lien fastened on the debtor's property by judicial process for their benefit is the result of their action. We are not concerned here with a factual situation where action is taken by or against the insolvent during his lifetime. There is only one fact upon which the unsecured creditors rely to convert their claims from unsecured claims to lien claims, namely, the debtor's death. In our opinion, this fact alone is insufficient to vest in such unsecured creditors, or in the administratrix, rights superior to those of the debtor.

It is noted that the Bankruptcy Act was amended 25 June, 1910. Prior thereto a trustee in bankruptcy had no better right or title to the property than the bankrupt had when the trustee's title accrued. The amendment conferred upon trustees in bankruptcy the rights and remedies of a lien creditor as against an unrecorded transfer. Thereafter, it was held that an unrecorded chattel mortgage was void as against a trustee in bankruptcy. *Hinton v. Williams*, 170 N.C. 115, 86 S.E. 994; *Holt v. Albert Pick & Co.*, 25 F. 2d 378 (C.C.A. 4th); *Fairbanks Steam Shovel Co. v. Wills*, 240 U.S. 642, 36 S. Ct. 466, 60 L. Ed. 841. Suffice to say, the title, rights and remedies of a trustee in bankruptcy are determined by the provisions of the Bankruptcy Act.

Neither the reasons advanced nor the authorities cited by appellant are deemed sufficient ground for this Court to overrule its decision in *McBrayer v. Harrill, supra.* On the contrary, under existing statutes, the rule declared therein is approved and recognized as the law in this jurisdiction.

It appearing, by stipulation, that no creditor, represented in this litigation by the administratrix, had a lien on said lumber when Weston died, it follows that plaintiff's lien thereon, valid between the original parties, is equally valid as against the administratrix. Hence, the judgment must be affirmed.

. It is noted that the judgment established a separate and unrelated claim of plaintiff in the amount of $478.02 as a valid unsecured claim against the Weston estate. Defendant did not assign error in respect of this portion of the judgment.

Affirmed.