## FAIRBANKS STEAM SHOVEL COMPANY *v.* WILLS, TRUSTEE IN BANKRUPTCY OF FEDERAL CONTRACTING COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 82. Argued December 2, 3, 1915.—Decided April 10, 1916.

A corporation organized under the laws of Illinois is to be deemed a resident of the State within the meaning of the Chattel Mortgage Act of that State and the county of residence is the county where its principal office is located although it may transact business in another county.

A corporation can only change its residence within the State of its incorporation by complying with the law of the State.

As the Illinois corporation which made the chattel mortgage in this case had its principal office in Cook County, and that office was never legally established in any other county, a mortgage which was recorded in a different county did not comply with the Recording Act of Illinois, and, as against the trustee in bankruptcy, was invalid.

Even though the bankrupt did not have its principal place of business in the district where the bankruptcy proceeding was instituted, that objection can be waived by appearing and answering to the merits in a proceeding instituted to obtain possession of assets of the bankrupt.

An adjudication of bankruptcy is not open to collateral attack, and the question of capacity of the trustee to sue is waived if not raised in the trial court.

If the chattel mortgage is not valid against the trustee because not properly recorded under the state law, the mortgagee's title is not perfected by taking possession after the filing of the petition and before adjudication.

Under § 47 a-2 as amended by the Act of June 25, 1910, trustees have the right and remedies of lien creditors as against unrecorded transfers; and, the estate being in *custodia legis*, the trustee's title relates back to the date of filing the petition.

212 Fed. Rep. 688, affirmed.

THE facts, which involve a controversy arising in a bankruptcy proceeding and the relative rights of a mort-

gagee of certain chattels of the bankrupt and the trustee in bankruptcy, are stated in the opinion.

*Mr. Elisha B. Durfee,* with whom *Mr. John A. Bellatti, Mr. Walter Bellatti* and *Mr. George B. Scofield* were on the brief, for appellant.

*Mr. Elbert C. Ferguson, Mr. William Mumford* and *Mr. John C. Burchard* for appellee, submitted.

Mr. Justice Pitney delivered the opinion of the court.

This is a controversy arising in a bankruptcy proceeding. On December 30, 1912, a creditors' petition in bankruptcy was filed in the United States District Court for the Southern District of Illinois against the Federal Contracting Company, a corporation of that State, and on March 25, 1913, it was adjudicated a bankrupt. Between those dates, and on March 6, the Fairbanks Steam Shovel Company, the present appellant, without actual knowledge of the filing of the petition, seized a certain floating steam dredge, then in possession of the Contracting Company at Beardstown, Cass County, which is in the Southern District of Illinois; doing this by virtue of a chattel mortgage given by the Contracting Company to appellant on June 8, 1912, the dredge then being in the possession of the mortgagor at Beardstown. After the adjudication of bankruptcy but before the appointment of a trustee, the bankrupt filed a petition against appellant in the bankruptcy proceeding, setting up that the mortgage was not acknowledged or recorded in Cook County, Illinois, where the principal office of the bankrupt was located by its charter, and for this reason was invalid against the trustee in bankruptcy to be appointed, and praying that appellant might be restrained from selling

the dredge as it threatened to do. The court entered a temporary restraining order, which was served; appellant, without questioning the jurisdiction of the court, appeared and answered, admitting that it had taken possession of the dredge under the provisions of the mortgage, alleging that the mortgage was duly executed and was given to secure a part of the purchase price of the dredge, and that at the time of its execution the bankrupt, through its officers, represented to appellant that its principal place of business was at Beardstown; and further that before the adjudication of bankruptcy appellant took actual possession of the dredge and thereby perfected its title thereto; and asking that the injunction be dissolved, etc. No trustee having yet been appointed, it was ordered by the court, upon a stipulation between the parties, that the sale should proceed, under an arrangement providing, among other things, that if appellant purchased the dredge it should hold it subject to the decision of the controversy. The sale was held accordingly, and the dredge was purchased by appellant. Thereafter appellee was appointed trustee in bankruptcy, and was substituted as a party to the controversy in place of the bankrupt. The matter was heard before the referee, who reported in favor of the trustee. The District Court overruled exceptions and confirmed the report; and, on appeal, the Circuit Court of Appeals affirmed the decree. 212 Fed. Rep. 688. The appeal to this court antedated the Act of January 28, 1915, ch. 22, §§ 4 & 6; 38 Stat. 803, 804.

The principal question is whether the chattel mortgage was properly acknowledged and recorded so as to be valid against the trustee in bankruptcy.

The law of Illinois respecting chattel mortgages may be found in ch. 95 of Hurd's Rev. Stat. 1909. Paragraph 1 provides that no such mortgage shall be valid as against the rights and interests of any third person unless possession shall be delivered to and remain with the grantee,

or the instrument shall provide for the possession of the property to remain with the grantor and the instrument be acknowledged and recorded as thereinafter directed. Paragraph 2 provides that such instrument shall be acknowledged before a specified officer of "the county where the mortgagor resides," if a resident of the State, with a proviso that in counties having a population of more than 200,000 (this applies to Cook County), such instrument, "if the mortgagor is a resident of the State," shall be acknowledged before one of several designated officers of the town, precinct, district, or county "in which the mortgagor resides." By par. 4, the mortgage, when so acknowledged, "shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time when the instrument is executed and recorded."

The bankrupt was incorporated in the year 1905 under a general act (Hurd's Rev. Stat. 1909, ch. 32), the second paragraph of which requires the organizers to make, subscribe, and acknowledge a statement setting forth the name of the proposed corporation, the object for which it is formed, its capital stock, the location of the principal office, etc., which is to be filed in the office of the Secretary of State. If the object of the proposed corporation is clearly and definitely stated and is a lawful object, the Secretary of State issues to the corporators a license as commissioners to open books for subscription to the capital stock. After the stock is subscribed, directors or managers elected, etc., the Secretary of State (par. 4) issues a certificate of the complete organization of the corporation. But, before this is done, the corporation must "file with the Secretary of State a statement setting forth the post-office address of its business office, giving street and number." (Act of May 10, 1901; Laws 1901, p. 124; Hurd's Rev. Stat. 1909, ch. 32, par. 192.)

Other sections (ch. 32, par. 50 *et seq.*) contain elaborate

provisions to be complied with when the directors of any corporation "may desire to change the name, to change the place of business, to enlarge or change the object for which such corporation was formed, to increase or decrease the capital stock," etc. There is to be a special meeting of the stockholders, called on notice mailed to each stockholder and published in a newspaper, and votes representing two-thirds of all the stock of the corporation shall be necessary for the adoption of the proposed change; an appropriate certificate is to be filed in the office of the Secretary of State, and a like certificate made a matter of record in the county where the principal business office of the corporation is located; and a notice of the change is also to be published in a newspaper for three successive weeks.

The statement made by the organizers of the bankrupt corporation declared: "The location of the principal office is in the City of Chicago, in the County of Cook, and State of Illinois." A license was issued to them as commissioners to open books for subscription to the capital stock, and in due course they made their report to the Secretary of State, in which it was stated: "That the post-office address of the business office of said company is at No. — Park Hotel, streets not numbered, in the City of Beardstown, in the County of Cass, and State of Illinois." Upon receipt of this, the Secretary of State issued a certificate of complete organization, including in it the first statement, the report of the commissioners, and other papers filed in his office respecting the organization of the corporation, as required by the statute. The first meetings of the stockholders were held in Chicago, and another stockholders' meeting was held there about two years later. All other recorded meetings of stockholders and directors were held in Beardstown. An office was nominally maintained in Chicago, but no records or books of account were kept nor any business transacted

there. So far as the practical conduct of the business was concerned, and to all outward appearances, the principal office was in Beardstown. But no change of "the place of business" was made in the manner prescribed by the statute.

The chattel mortgage was made, acknowledged, and recorded in Cass County, and was never either recorded or acknowledged in Cook County.

The Circuit Court of Appeals held, affirming the District Court, that the "residence" of the bankrupt was in Chicago, which is in Cook County, and that therefore the mortgage, having never been properly acknowledged or recorded, was invalid as against the trustee in bankruptcy.

This, in our opinion, was a correct disposition of the question. The statutes of Illinois recognize the propriety of a fixed location for the principal office of a corporation, requiring this to be specified in the certificate of organization and to be left unchanged except on formal action by two-thirds in interest of the stockholders. Whether "principal office" and "business office" are synonymous is not entirely clear, and we are referred to no decision by the state courts throwing light upon this. But, supposing them to be synonymous, it does not seem to us that the report of the commissioners for stock subscriptions can have the effect of establishing the office in Cass County, for we find no authority in the commissioners to materially change the location of the principal office as formally declared by the organizers.

We are of opinion that a corporation organized under the laws of Illinois is to be deemed a resident of the State within the meaning of the chattel mortgage act, and that the county of its residence must be taken to be the county in which its principal office is located. So far as the decisions of the state courts throw light upon the question they bear out this view. *Bank of North America* v. *Chicago &c. R. R.,* 82 Illinois, 493, 496; *Hewitt* v. *General*

*Electric Co.,* 164 Illinois, 420, 425. And a similar view prevails in other jurisdictions. In *Ex parte Schollenberger,* 96 U. S. 369, 377, this court, by Mr. Chief Justice Waite, said: "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter; but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local laws." And in *Galveston &c. Ry.* v. *Gonzales,* 151 U. S. 496, 504, the court, by Mr. Justice Brown, said: "In the case of a corporation the question of inhabitancy must be determined, not by the residence of any particular officer, but by the principal offices of the corporation, where its books are kept and its *corporate* business is transacted, even though it may transact its most important business in another place." A case in point with the present is *First Natl. Bank* v. *Wilcox,* 72 Washington, 473. And see *Western Transportation Co.* v. *Scheu,* 19 N. Y. 408; *Union Steamboat Co.* v. *Buffalo,* 82 N. Y. 351, 355; *Pelton* v. *Transportation Co.,* 37 Oh. St. 450; *Jenkins* v. *California Stage Co.,* 22 California, 538; *Cohn* v. *Central Pacific R. R.,* 71 California, 488.

It is hardly necessary to say that whatever equities, if any, arose out of the mortgagor's representation that its principal place of business was at Beardstown, or out of the fact that the mortgage was given to secure a part of the purchase price of the dredge, were confined in their effect to the immediate parties, and could not operate to estop the trustee in bankruptcy, representative of the interests of creditors for whose protection the recording act was passed.

It is objected by appellant that a determination that the bankrupt corporation had its principal place of business and therefore its residence in Cook County, which is in the Northern District, shows at the same time that the United States District Court for the Southern District of

Illinois had no jurisdiction to entertain the proceeding in bankruptcy under § 2 of the Bankruptcy Act, and hence no jurisdiction over the present controversy. (See *Harris* v. *First Nat'l Bank*, 216 U. S. 382.) As to this, the Circuit Court of Appeals correctly held that appellant, by answering and making defense upon the merits, consented to the jurisdiction, so that whether, under §§ 23a and 23b, construed together with § 70e as amended, consent to the jurisdiction of the District Court was required need not be considered.

On like grounds, it is insisted that the adjudication of bankruptcy was invalid, and that the trustee had no capacity to sue. But the adjudication is not open to collateral attack, and the question of capacity was waived because not raised in the trial court.

Appellant's title was not perfected, as against the trustee in bankruptcy, by taking possession of the dredge under the mortgage after the filing of the petition in bankruptcy and before the adjudication. Since the amendment of § 47a-2 of the Bankruptcy Act by the Act of June 25, 1910 (ch. 412, § 8; 36 Stat. 838, 840), trustees have the rights and remedies of a lien creditor or a judgment creditor as against an unrecorded transfer. The estate was *in custodia legis* from the filing of the petition, and the title of the trustee related back to that date. *Acme Harvester Co.* v. *Beekman Lumber Co.*, 222 U. S. 300, 307; *Everett* v. *Judson*, 228 U. S. 474, 478.

Other questions are raised, but they are unsubstantial and require no particular mention.

*Decree affirmed.*