## UNIVERSAL CREDIT CO. v. FORTIN-BERRY.

### In re LIPSCOMB MOTOR CO.

#### No. 6558.

Circuit Court of Appeals, Fifth Circuit.

Jan. 26, 1933.

Rehearing Denied Feb. 20, 1933.

Palmer Hutcheson and S. H. German, both of Houston, Tex., for appellant.

Rodman S. Cosby, of Houston, Tex., for appellee.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

By a reclamation petition filed with the referee in bankruptcy, the appellant claimed eleven Ford automobiles which, at the time of the bankruptcy adjudication, were in the possession of the bankrupt, a corporation, which was engaged in the retail sale of Ford automobiles; those automobiles having come into the possession of the trustee upon his appointment. The bankrupt acquired possession of the automobiles pursuant to a course of dealing to which the bankrupt, the appellant, and the Ford Motor Company, the manufacturer of the automobiles, were parties; that course of dealing being as follows: When the bankrupt desired to obtain automobiles, as to which it might effect sales, it applied to the appellant for credit with respect to obtaining such automobiles from the manufacturer; upon the approval of such application by the appellant, the bankrupt sent its agent to the manufacturer's plant at Houston, Tex., and, before delivery of the automobiles desired, the bankrupt's agent paid to the manufacturer 10 per cent. of the manufacturer's price therefor, and, contemporaneously with this payment, the manufacturer, in accordance with the prior arrangement and understanding of all parties to the transaction, executed to the appellant a bill of sale covering such automobiles, and the appellant paid the manufacturer the balance of the purchase price of said automobile. Contemporaneously with the execution of such bill of sale, the bankrupt executed in favor of the appellant a trust receipt in the following form covering said automobiles:

"Trust Receipt.

"Received of Universal Credit Company the Motor Vehicles described above.

"I (we) hereby acknowledge that said Motor Vehicles are the property of said Universal Credit Company, and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property; and I (we) hereby agree to keep said Motor Vehicles brand new and not to operate them for demonstrating or otherwise, except as may be necessary to drive said Motor Vehicles from freight depot or from above city to my (our) place of business with all due care at my (our) risk en route against all loss and damage to said Motor Vehicles, Persons or Property, and to return said Motor Vehicles to said Universal Credit Company, or its order upon demand; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of any of said motor vehicles to any other person until after payment of corresponding amount shown on Dealer's Record of Purchase and Release of like identification number herewith. I further agree that the deposit made by me (us), in connection with this transaction, may be applied for reimbursement for any expense incurred by Universal Credit Company, in the event of breach of this Trust or repossession of said Motor Vehicles.

"It is further agreed that no one has authority to vary the terms of this Trust Receipt.

"Executed this ——— day of ———, 19—, at ———.

"———————, Dealer.

"By ———————.

"Witness ———————."

At the time of the execution of such trust receipt, and before the delivery of the automobiles described therein, the bankrupt executed in favor of the appellant promissory notes; each being in the amount of the balance of the manufacturer's price for one of said automobiles, after applying thereon the 10 per cent. of the purchase price paid by the bankrupt, the amount of each note being payable on a stated date to the order of the appellant. At the time of the execution of such trust receipts and notes, they

were parts of the same instrument; the notes being subsequently detached by the appellant. Following the execution of such trust receipts, the automobiles described therein were delivered to the bankrupt, which transferred them to its place of business and there daily exposed them for sale in the usual course of its business. The appellant did not file or record any of the trust receipts covering an automobile claimed in any public depository so as to give constructive notice of their existence. Neither the trustee nor any of the creditors of the bankrupt at the time of the filing of the bankruptcy petition had any actual or constructive notice of the existence of the trust receipts. At the time of the filing of the bankruptcy petition, there were no persons who, by reason of dealings with the bankrupt or the appellant, were innocent purchasers of the automobiles in controversy, and there were no persons who by reason of dealings with the appellant or the bankrupt were lien creditors claiming liens upon said automobiles by way of contract, judgment, attachment, or otherwise, and the bankrupt had no secured creditors nor any type of creditor that had secured any interest in said automobiles by way of lien or judgment prior to the time the trustee seized said automobiles, except in so far as appellant may be considered to be such. Pursuant to an agreement between the parties interested, the trustee sold the claimed automobiles for the sum of $4,607.50, which sum of money received by the trustee by agreement of the parties was to stand in the place of such automobiles. The referee denied the claim asserted by the appellant. That ruling was affirmed by the court.

By the contract evidenced by the above set out trust receipt and the accompanying notes, the bankrupt was entitled to retain the described automobiles and sell them as its own upon paying the notes given by the bankrupt to the appellant, and the bankrupt was unconditionally bound to the appellant for the amount of such notes. The contract provided for a sale of the described automobiles by the appellant to the bankrupt; the consummation of such sale being conditioned upon the payment by the bankrupt of the amount called for by the notes given by it. The language of the instruments negatives the conclusions that appellant delivered the automobiles to the bankrupt to be sold for the appellant on commission, or that appellant had any proprietary right to the whole or any part of the price for which the automobiles might be sold by the bankrupt. It is apparent that appellant reserved title to the automobiles as security for the stipulated purchase money thereof, for the payment of which the bankrupt was unconditionally bound. A Texas statute provides as follows: "All reservation of the title to or property in chattels, as security for the purchase money thereof, shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Nothing in this law shall be construed to contravene the landlord and tenant law." Revised Civil Statutes of Texas 1925, art. 5489. Another statute (Id. art. 5490) avoids as against the mortgagor's creditors a chattel mortgage not filed for record in the office of the county clerk of the county in which the property is situated. It is settled by Texas decisions that the quoted statute applies in the case where one delivers chattels to another under an agreement that title thereto shall remain in the former until the payment by the latter of the agreed price. Crews v. Harlan, 99 Tex. 93, 87 S. W. 656, 658, 13 Ann. Cas. 863; Harling v. Creech, 88 Tex. 300, 31 S. W. 357. The following are extracts from the opinion rendered in the first cited case in which the quoted statute was construed and held to be applicable to a transaction by which the owner of mules delivered them to another person under an agreement that the title to the mules should remain in the former until full payment of notes given by the latter for the amount of the agreed price: "The evil of the law as it then existed was that it permitted one to acquire the possession of personal property to which he had an incomplete title, and to obtain credit upon the faith thereof, to the detriment of his creditors. It was to correct this evil that the statute in question was passed. The method by which this end was sought to be accomplished was by providing that by operation of law the conditional sale should take effect only as a mortgage to secure the unpaid purchase money, and to make it wholly ineffectual as to creditors unless reduced to writing and registered as other chattel mortgages. The effect of the statute is to change the nature of the contract from that of a sale, to take effect so as to pass the title only upon payment of the purchase price, to a mortgage to secure the debt. * * * We think that the contract in question would, without the statute, have been a valid agreement by which the seller would have retained the title to the mules until the purchase money was paid, and that the effect of the statute was to pass the title, and

to degrade the contract from a conditional sale to a chattel mortgage." The contention urged in behalf of the appellant that the quoted statute applies only when there is an absolute sale by the owner of chattels is inconsistent with the language of the statute and the cited decisions construing it. It plainly appears from those decisions that, though the sale provided for is to take effect only upon performance of a stated condition, there being no vendee until such performance occurs, the statute gives to all reservations of the title to or property in the chattels, as security for the purchase money thereof, the effect of making the contract a chattel mortgage, and, when possession is delivered to the party who is to be the vendee only upon his performing the stated condition, of making such reservations void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages. Texas decisions, such as the one in the case of Renfroe v. Hall (Tex. Civ. App.) 202 S.W. 218, with reference to contracts providing for the owner of chattels delivering possession thereof to another, who is given the right to sell for the owner, being made an agent in the nature of a factor, are not applicable to such a state of facts as is disclosed in the instant case. Though in form the contracts now in question provided for sales upon a condition to be performed, under the statute the appellant's reservation of title, as security for the purchase money provided for, made the contracts chattel mortgages, and, possession of the chattels having been delivered to the bankrupt, such reservation was void as to the bankrupt's creditors as a result of not being registered as required of chattel mortgages.

The reservations of title by the appellant, being void as to the bankrupt's creditors, were void as to the trustee in bankruptcy, who, under amended section 47a (2) of the Bankruptcy Act, 11 USCA § 75 (a) (2), has the status of a creditor holding a lien by legal or equitable proceedings. Fairbanks Shovel Co. v. Wills, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841; Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275.

In argument in behalf of the appellant, a challenge of the court's ruling was based on the institution and pendency in a state court of a proceeding by the appellant for the recovery of the possession of the automobile in question. To say the least, it does not clearly appear from the record that that proceeding was instituted before the filing of the bankruptcy petition. Whether that proceeding was instituted before or after the filing of the bankruptcy petition, appellant's abandonment of it was evidenced by the appellant invoking the decision of the bankruptcy court as to its asserted claim and agreeing to the sale of the automobiles under the orders of that court. We think there is no merit in the challenge of the court's order on the ground now under consideration.

We conclude that the court did not err in rejecting the claim asserted by the appellant. The order to that effect is affirmed.