## In re NOLAN MOTOR CO., Inc.
### No. 3430.

District Court of the United States for the District of Columbia.
June 28, 1938.

Francis S. Brooke, of Washington, D. C., for trustee in bankruptcy.

Wm. E. Richardson, of Washington, D. C., for the Universal Dealers Co.

FRED J. EDEN, Referee.

The petition of the Universal Dealers Company filed herein seeks to have the fund realized by the trustee in bankruptcy impressed with a lien in its favor. The pertinent facts as disclosed by the petition, the answer of the trustee thereto and the testimony of witnesses reveal that the bankrupt on May 12, 1936, made application to the Universal Dealers Company, the petitioner herein, for a loan of $25,000. After an investigation concerning the credit responsibility of the applicant the loan was made on June 11, 1936, secured by what purports to be a chattel mortgage on all of the tangible assets of the Nolan Motor Company, the bankrupt herein.

The mortgage deed was not at this time acknowledged and hence could not have been recorded. As to the absence of acknowledgment the testimony of petitioner's witness Kirsch, and the documents identified by him, reveal that the mortgage was not to be recorded—that the dealer (Nolan Motor Company) had "stipulated that the documents are not to be filed because of the unfavorable publicity which would result and it is agreed with dealer that we will not record unless extenuating circumstances arise which would justify such action." It also appears from the notations on the documents introduced by petitioner that the petitioner was advised at the time that the mortgage was "invalid unless filed" and that "dealer objects to filing."

Nevertheless the loan was made and the so-called mortgage executed, signed by the Nolan Motor Company by its secretary, J. F. Gallagher, and its president, W. J. Nolan, and delivered to the petitioner, without acknowledgment.

Thereafter the Nolan Motor Company repaid to the petitioner the sum of $10,000 on account of this loan, reducing the indebtedness to the petitioner to $15,000.

On August 28, 1936, the Nolan Motor Company again applied to the petitioner for an additional loan of $10,000, which after investigation by the petitioner was granted. The Nolan Motor Company thereupon executed and delivered to the petitioner a supplement to the said mortgage of June 11, 1936, covering and purporting to secure the advance of the additional sum of $10,000. This supplement is dated September 4, 1936, signed by Nolan Motor Company, Inc., per William J. Nolan, president, attested J. F. Gallagher, secretary, but not acknowledged, and hence could not have been recorded.

As to the absence of acknowledgment the testimony of petitioner's witness Kirsch, and the documents produced and identified by him, reveal that the "dealer (Nolan Motor Company) stipulates that documents are not be to filed as unfavorable publicity would result. It is not suggested that we record unless extenuating circumstances arise which justify such action." It also appears that the petitioner was advised at the time the supplement was executed that the mortgage was "invalid unless filed," and that "dealer objects to filing."

Being apprehensive concerning the nature of its security the petitioner on November 12, 1936, procured an acknowledgment of the aforesaid chattel mortgage and also procured an acknowledgment of the supplement thereto, the said acknowledgments being made by W. J. Nolan, president. The mortgage dated June 11, 1936, acknowledged November 12, 1936, and the supplement to the mortgage dated September 4, 1936, and acknowledged November 12, 1936, were thereupon recorded in the office of the Recorder of Deeds for the District of Columbia on November 12, 1936.

It also appears that on November 12, 1936, default having occurred on behalf of the Nolan Motor Company with respect to the terms and provisions of the chattel mortgage referred to, the Nolan Motor Company, by letter of said date, authorized the petitioner, Universal Dealers Company, to take possession of all of the automobiles described in Schedule A as attached to said chattel mortgage and any other automobiles covered by the terms of said mortgage. It also appears that pursuant to this authorization the petitioner did take possession of a certain number of automobiles in possession of the bankrupt and purporting to be covered by the chattel mortgage, and it further appears that on November 18, 1936, the petitioner attempted to take possession of the stock in trade of the debtor consisting of accessories, used automobiles, office furniture and equipment, all said to be covered by the alleged chattel mortgage, but was prevented from doing so by the bankrupt. The petitioner did, however, succeed in annexing "stickers" to some of this property claiming the same as the property of the petitioner.

During the period June 11, 1936, the date of the execution of the mortgage, and November 12, 1936, on which date the deed and the supplement thereto were recorded, the Nolan Motor Company contracted

substantial additional new debts and obligations. The Nolan Motor Company was also heavily indebted prior to and on June 11, 1936.

On the 21st day of November, 1936, ten days after the recording of the mortgage and the supplement thereto, an involuntary petition in bankruptcy was filed against the Nolan Motor Company resulting in an adjudication in bankruptcy on November 23, 1936, whereupon the proceedings were referred to the undersigned referee in bankruptcy.

Thereafter, the trustee in bankruptcy, Bolitha J. Laws, Esq., sold at public auction all the assets of the bankrupt company under a stipulation that whatever right of lien asserted by the petitioner would attach to the proceeds in the hands of the trustee in bankruptcy.

The Universal Dealers Company has now filed its petition claiming that by reason of the aforesaid chattel mortgage and the supplement thereto it is entitled to have the proceeds in the hand of the trustee impressed with a lien in its favor, upon the theory that it possesses a lien which was not dissolved by any provision of the Bankruptcy Act, 11 U.S.C.A. § 1 et seq.; that the mortgage and the supplement were given for a valid consideration, and that the said deed was recorded within ten days of ·acknowledgment as required by Sec. 177, Title 25—Property, of the District of Columbia Code (1929), and that the said section does not protect ordinary unsecured creditors against an unrecorded chattel mortgage unless such creditors be judgment creditors having a lien paramount and superior to the lien of the chattel mortgagee.

This view assumes the validity as against the trustee of the deed executed by the mortgagor on June 11, 1936, as well as the validity as against the trustee of the supplement thereto executed on September 4, 1936, which were executed with the distinct understanding, if not agreement, that the deed and supplement were not to be recorded because of the unfavorable publicity that might result and hence were not acknowledged so that recording was possible.

The view that has been taken of this question by the referee is that it is unnecessary to decide whether this mortgage and supplement thereto created a lien as against the creditors whose claims arose subsequently whether or not they be judgment creditors having a lien, for the reason that the mortgage and supplement are void at the instance of the trustee in bankruptcy as against all creditors—those in existence at the time the mortgage was executed and those creditors whose debts were created subsequently.

Section 70, paragraph e, of the Bankruptcy Act, 11 U.S.C.A. § 110(e), provides in part that "the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided * * *".

It is further provided under Section 67, paragraph a, of the Bankruptcy Act, 11 U.S.C.A. § 107(a), that "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate."

Section 67, paragraph e, of the Bankruptcy Act, 11 U.S.C.A. § 107(e), provides further: "(e) [That] all conveyances, transfers, assignments, or incumbrances of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this Act [title] within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; and all property of the debtor conveyed, transferred, assigned, or encumbered as aforesaid shall, if he be adjudged a bankrupt, and the same is not exempt from execution and liability for debts by the law of his domicile, be and remain a part of the assets and estate of the bankrupt and shall pass to his said trustee, whose duty it shall be to recover and reclaim the same by legal proceedings or otherwise for the benefit of the creditors. And all conveyances, transfers, or incumbrances of his property made by a debtor at any time within four months prior to the filing of the petition against him, and while insolvent, which are held null and void as against the creditors of such debtor by the laws of the State, Territory, or District in which said property is situate, shall be deemed null and void under this Act [provisions of this title] against the creditors of such debtor if he be adjudged a bankrupt, and such property shall pass to the assignee and be by him reclaimed and recovered for the benefit of the creditors of the bankrupt. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any State court which would have had

jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

The Code of Law for the District of Columbia, Title 11, Section 11, page 117, provides that: "Chapter 2.—Fraudulent Conveyances. Section 11. *Intent to defraud creditors.*—Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands or rents and profits issuing from the same, or in goods or things in action, and every charge upon the same, and every bond or other evidence of debt given, or judgment or decree suffered, with the intent to hinder, delay, or defraud creditors or other persons having just claims or demands of their lawful suits, damages, or demands, shall be void as against the persons so hindered, delayed, or defrauded: Provided, that nothing herein shall be construed to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor: Provided further, that the question of fraudulent intent shall be deemed a question of fact and not of law. (Mar. 3, 1901, 31 Stat. 1368, C. 854, sec. 1120.)"

The Code of Law for the District of Columbia, Title 25, Section 177, page 360, with reference to the recordation of chattel mortgages provides that: "Bills of Sale, Chattel Mortgages, Deeds of Trust, and Conditional Bills of Sale. 177. *Recording of bills of sale, chattel mortgages, and deeds of trust.*—No bill of sale, mortgage, or deed of trust to secure a debt of any personal chattels whereof the vendor, mortgagor, or donor shall remain in possession, shall be valid or effectual to pass the title therein, except as between the parties to such instruments and as to other persons having actual notice of it, unless the same be executed, acknowledged, and within ten days from the date of such acknowledgment filed in the office of the recorder of deeds and the said filing of such instrument therein as aforesaid as to third persons not having notice of it as aforesaid shall be operative only from the time within the said ten days when it is delivered to said record. (Mar. 3, 1901, 31 Stat. 1275, c. 854, sec. 546; Mar. 3, 1925, 43 Stat. 1103, c. 417, sec. 546.)"

Under Section 47a of the Bankruptcy Act, Subdivision 2, 11 U.S.C.A. § 75(a) (2), it is provided that trustees in bankruptcy "As to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court shall be deemed vested with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied * * *."

The giving of a secret lien and the attempt to enforce such a lien against the claims of creditors represented by the trustee in bankruptcy is repugnant not only to the spirit but to the letter of the Bankruptcy Act. The petitioner, while providing a consideration for the mortgage and its supplement at the time these documents were signed by the bankrupt, consented to receive them without acknowledgment upon an understanding, if not by agreement, that the documents should not be recorded, as requested by the bankrupt because of the "unfavorable publicity that would result." Quite naturally the publication of the mortgage would affect the debtor's credit and the request not to record doubtless was for the purpose of keeping the existence of the mortgage a secret so that the debtor's credit would not be impaired. According to the record, substantial new credit was extended to the bankrupt between the date of the execution of this mortgage in June and its actual acknowledgment and recordation on November 12. These actions of the bankrupt establish fraud in the opinion of the referee and consequently the giving of the mortgage on June 11, 1936, and the supplement thereto on September 4, 1936, under these circumstances, was a transfer with the intention of hindering, delaying or defrauding creditors, and therefore absolutely void by reason of the Bankruptcy Act and the District of Columbia Code.

The giving of the mortgage followed by withholding it from record pursuant to an agreement or understanding most naturally and probably operated to hinder, delay and defraud the bankrupt's creditors. The parties are presumed to intend the natural and probable consequences of their own acts. Whatever may have been the intention of the petitioner is immaterial. The petitioner may have intended in good faith to assist the debtor with this loan but the fact remains that the petitioner accepted the mortgage with the understanding that it be not recorded and to this extent assisted the bankrupt in his unlawful intention to keep secret his real financial condition. None of

the problems presented by this petition could have been presented if the petitioner had followed the provisions of the Code of Law for the District of Columbia, but it elected not to do so.

That the mortgage was given for a valuable consideration is likewise immaterial. National Bank of Athens v. Shackelford, Trustee in Bankruptcy for Webb, 239 U.S. 81, 36 S.Ct. 17, 60 L.Ed. 158. There a mortgage was given by the bankrupt for a valid consideration and as here, certainly effective as between the parties thereto but by an understanding, if not by agreement, was withheld from record so as not to affect the mortgagor's credit. The mortgage was actually recorded a few hours before the involuntary petition in bankruptcy was filed. It was found as a matter of fact that the mortgage in question was void as to creditors because executed and withheld from record for the purpose of hindering, delaying or defrauding them.

The effect of the failure to record a mortgage where the withholding from record is pursuant to an understanding or agreement was also considered in Holt v. Albert Pick & Company, 4 Cir., 25 F.2d 378. The court there said [page 379]:

"* * * Had the appellee recorded his chattel mortgage in accordance with the provisions of this statute, none of the questions here presented would have arisen, but this was not done. It seems clear from the evidence that the failure to record the mortgage resulted from the requests of J. F. Somers to the appellee's general manager not to do so, and was for the purpose of not injuring Somers' credit. An agreement to conceal the existence of a lien of this character, while giving possession of the property to the vendee, with its attendant inducement to the giving of credit to the vendee by innocent third parties, is repugnant to both law and equity.

"*     *     *     *     *     *

"As far as the third party creditors, without notice as to the conditions surrounding the purchase and transfer of the property and without notice as to the chattel mortgage are concerned, the Somers Hotel System, Incorporated, was in possession of the property, was apparently the owner of the property, and was entitled to credit on the strength of such ownership. Whatever equities may arise out of the mortgage transaction are confined in their effect to the immediate parties, and 'could not operate to estop the trustee in bankruptcy, representative of the interests of creditors for whose protection the recording act was passed.' Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841.

"J. F. Somers himself testified that the general manager of Albert Pick & Co. agreed not to record the mortgage as long as the notes given for the deferred payment were paid promptly. Several witnesses testified that the general manager of Albert Pick & Co. stated that he had agreed not to record the mortgage, and one witness testified positively that the general manager of Albert Pick & Co. stated that this was in order not to injure the credit of J. F. Somers. These statements were not denied. The general manager, who was charged with making them, was not put upon the stand, and the inevitable conclusion is that they were true, and for the purposes of this opinion they must be taken as true. That being the case, Albert Pick & Co. entered into an agreement with J. F. Somers that in effect permitted him or his assigns to hold himself out to the world as the owner' and possessor, without lien or incumbrance, of the property in question. In entering upon such a course, and in permitting its lien to remain a secret one, the appellee took its chances, and should not be heard to complain, if it now suffers a loss, that is the natural and expected consequence of its own action. Secret liens have always been repugnant to the law. * * *"

See, also, In re Gill, 5 Cir., 92 F.2d 810, decided November 17, 1937. In that case a mortgage was given by the bankrupt but withheld from record pursuant to an agreement or understanding. The mortgage was dated April 18, 1930, filed for record January 4, 1936. The adjudication occurred in April, 1936.

The court there said [page 811]:

"* * * It is well settled that, where a mortgage is withheld from record under an agreement between the mortgagee and the bankrupt, in order that the bankrupt may obtain credit which otherwise would not be available, the mortgage is rendered fraudulent and void, not only as to subsequent creditors, but as to all those interested in the bankrupt's estate. In re Duggan (C.C.A.) 183 F. 405; Fourth National Bank of Macon v. Willingham (C.C.A.) 213 F. 219; Cooper Grocery Co. v. Penland (C.C.A.) 247 F. 480.

"Appellant cannot be heard to say that, since the agreement to withhold was not

brought to the attention of the directors it was not its agreement. The mortgage was obtained by its president on the agreement, without which it would not have been given. Appellant is estopped to repudiate the agreement not to record and at the same time to claim the benefit of the mortgage obtained pursuant to that agreement. Actions speak louder than words, and, in ascertaining what the parties intended, it is permissible to look to what the parties did, as well as what they said. The giving of this mortgage, followed by withholding it from record, naturally and probably operated to hinder, delay, and defraud the bankrupt's creditors. Subsequent facts have proven that it actually had that effect. Parties are presumed to intend the natural and probable consequences of their own acts. The District Court found that the mortgage was given and withheld from record for the purpose of hindering, delaying, and defrauding creditors of the bankrupt. We see no reason to disturb this finding."

■ Since the mortgage, in view of the foregoing, therefore, is void as to the trustee in bankruptcy as constituting a transfer or incumbrance of the debtor's property with an intention of hindering, delaying or defrauding creditors, it naturally follows that the taking of possession of any of the property covered by the mortgage, actually or constructively by the petitioner, could not in any way improve the petitioner's claim of a lien on such property for the reason that the taking of such possession actually or constructively was pursuant to this alleged mortgage which is void as against the trustee in bankruptcy.

■ The fact that the mortgage and the supplement were actually recorded on November 12, 1936, ten days before the petition in bankruptcy was filed, could not for the same reason perfect the petitioner's claim of lien for the reason that the document thus recorded was invalid as against the trustee in bankruptcy in view of the circumstances surrounding its execution on June 11, 1936, and the amendment thereto executed on September 4, 1936.

■ The Code of Law for the District of Columbia regarding recordation of chattel mortgages does not require acknowledgment simultaneous with the execution thereof. However that may be, the fact still remains that as to third parties without notice of the mortgage the acknowledgment and the recordation are the final acts in the execution of the mortgage. The petitioner contends that its rights under the mortgage upon recording relate back to the time of the execution of the deed. That theory would destroy completely the very purpose of Section 177, supra, of the Code requiring recordation of mortgages to be effective as against third parties without notice thereof. If the view taken by the petitioner be correct an unacknowledged chattel mortgage could be secretly withheld from record for any length of time and intervening rights of creditors completely cut off by the simple expedient of having the mortgagor at some later date acknowledge the deed in order that it might then be recorded. If as the petitioner contends the lien of the mortgage would relate back to the date of the execution of the instrument all intervening rights of creditors could be cut off, creditors who have no notice whatsoever of the existence of such a secret lien and who have a right to rely upon the debtor's possession of its property as grounds for extending credit.

■ Under the circumstances therefore the referee is of the opinion that the petitioner is not entitled to any lien on the proceeds of the sale of the debtor's property in the hands of the trustee in bankruptcy and an order therefore will be entered denying the prayers of the petition of the Universal Dealers Corporation and decreeing that the funds in the hands of the trustee be distributed free and clear of any lien on behalf of the said Universal Dealers Corporation.

The parties hereto will settle order on two days' notice.

BAILEY, Justice.

I agree with the reasoning of the referee in his certificate of review and affirm it. I do not think it necessary to determine whether the Universal Dealers Company had actual intent to defraud creditors of the bankrupt, but the effect of taking a secret lien and the withholding of the recording of the chattel mortgage to prevent "unfavorable publicity" necessarily did have the effect of permitting the mortgagor to obtain credit to which it would not be properly entitled.