964

## BURNS v. ENDER COAL & COKE CO.
### et al.
### No. 6688.

Circuit Court of Appeals, Seventh Circuit.
June 2, 1939.

Rehearing Denied July 7, 1939.

William A. Rogan, of Chicago, Ill., and Lenn J. Oare, of South Bend, Ind., for appellant.

Aaron H. Huguenard, of South Bend, Ind., and Chas. A. Crawford, of Terre Haute, Ind., for appellees.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

SPARKS, Circuit Judge.

The question here presented arose out of a receivership of the Vermillion Coal Company, resulting from an action in the District Court instituted by the Ender Coal and Coke Company. In that proceeding certain property of the Vermillion Coal Company was sold by its receiver by order and with the approval of the court. Later the receiver distributed the funds and filed his final report, and it was approved by the court. Subsequently thereto, and during the same term at which the final report was approved, appellant filed his motion to vacate the order of sale and the order approving the receiver's report. Thereafter the receiver filed his motion to dismiss appellant's motion. The court sustained this motion to dismiss, and from this order of the court this appeal is prosecuted.

A chronological statement of the various steps taken in this proceeding is here set forth: The Ender Coal and Coke Company was a corporation organized under the laws of Illinois, and the Vermillion Coal Company was organized under the laws of Indiana. Their residences were in the respective states of their organization. The complaint, which was filed on June 17, 1929, alleged that the Vermillion Coal Company carried on business in both the Northern and Southern Districts of Indiana, and that a portion of its property, resources and assets were located in each district. The Vermillion Coal Company was indebted to the Ender Coal and Coke Company in excess of $108,000, which was evidenced by past due and unpaid promissory notes. The debtor was further indebted to other persons and corporations in the approximate sum of $240,000, which was due and unpaid.

A large part of the debtor's assets was represented by leases upon coal lands upon which it was in default, or about to come in default. In that event they were subject to cancellation, and if cancelled, the value of the debtor's property would have been reduced to not more than a salvage value. The debtor was unable to meet these obligations in the ordinary course of business and was insolvent. It was upon these allegations that the court was requested to appoint a receiver. On the same day the complaint was filed, the Vermillion Coal Company filed its answer admitting the truth of the averments and consented that a receiver should be appointed.

On the same date, Milward, Crawford, Spears, and Cochran, claiming to be

creditors of the debtor, and Buena V. Marshall, claiming to be trustee under a certain mortgage executed by the debtor for five creditors holding notes for $70,000, filed a motion representing that the claims held by them constituted 97 per cent of the total amount of the indebtedness owed by the debtor, and that it would be for the best interest of all parties that a receiver be appointed. On account of the special qualifications of the creditor Spears, they recommended that he be appointed as a receiver. On the same day the court granted the request of the bill and answers and appointed Wilbur N. Warner, of the Northern District of Indiana, and Archibald D. Spears, of the Southern District of Indiana, as receivers to take possession of all the property and assets of the debtor and to maintain and operate them. They qualified as receivers and filed their inventories and appraisal of the debtor's property on July 16, 1929.

On October 10, 1929, the receivers requested authority from the court to borrow $30,000, upon receivers' certificates, for the purpose of operating the property. This petition was consented to by Marshall, trustee, the authority to issue the certificates was thereupon granted, and they were issued and sold.

On January 8, 1931, an employee, on behalf of himself and more than two hundred other employees, filed a petition to enforce liens for their wages against the receivers in the sum of $5,000. This was granted by the court on January 14, 1931. On February 25, 1931, the court entered an order for the filing of claims and directed that notice be given of the hearing to determine their priorities. On March 11, 1931, Mark E. Nebeker, as successor trustee to Buena V. Marshall, under the mortgage given by the debtor to secure the notes executed by it, including the notes now claimed to be held by appellant, filed his claim in the sum of $79,450. On August 17, 1931, the court classified the liens and claims on the notes secured by the mortgage as seventh in priority.

On October 28, 1932, the receivers filed a motion to sell the real estate and the personal property, alleging that the assets of the debtor, including the trust estate, were not sufficient in value to pay either the liabilities of the receivers or those of the debtor, and asked for an order to sell all of the assets except cash, and bills, notes and accounts receivable. They further requested an order to sell the property free and clear of liens and encumbrances, except taxes, and that all liens be transferred to the fund arising from the proceeds of the sale in order of preference as the court should direct. They further asked that Nebeker, as trustee, be made a party defendant and that process issue to him. Thereupon Nebeker, as trustee, entered his written appearance to the petition, and on October 28, 1932, the court entered this order in accordance with the prayer, and fixed the upset price at $60,000.

On June 15, 1933, the receivers reported their inability to procure a bid for the minimum price and asked that the order be modified so that the property referred to might be sold for the best price obtainable. The order was so modified. On November 1, 1934, the receivers reported their inability to obtain any bid for the property and that Spears, one of the trustees, proposed to organize the Ferndale Coal Company, Inc., and on its behalf to offer $22,550 for the property. On the following day the receivers notified the creditors that Spears had tendered his resignation as receiver and had made such offer for the property, and that a hearing would be had upon such offer on November 10, 1934.

On November 28, 1934, Warner, receiver, presented to the court a contract between himself and Spears purporting to carry out the terms of the proposal last above mentioned. On the same day the court found that this contract would be for the best interest of all parties concerned and thereupon it was approved.

On May 17, 1935, Warner, receiver, reported to the court that Spears had been unable to carry out the terms of the contract, but that he was negotiating with the Reconstruction Finance Corporation for a loan for that purpose. The court thereupon continued the existing status of the contract with Spears, and on June 29, 1937, Warner, receiver, reported to the court that Spears had transferred to the Ferndale Coal Corporation all of his right under the contract and that such corporation, having been granted a loan by the Reconstruction Finance Corporation, would be able to carry out such contract if interest on the deferred payments were remitted. Thereupon the court directed the receiver to deliver to the Ferndale Coal Corporation a conveyance of the property and assets upon the payment by that corporation of the purchase price agreed up-

on, less interest. This was done, and on August 24, 1937, the receiver filed his final report, accounting for all receipts and disbursements made by him. The court thereupon set the report for hearing on September 9, 1937, and required that notice be given to all creditors on or before August 31, 1937. Notice of such hearing was mailed to all known creditors, including Thomas H. Cochran, and also Nebeker, as trustee under the mortgage. This notice was also duly published, and on September 9, 1937, the court approved the receiver's final report.

On September 14, 1937, appellant filed his motion to vacate the order of sale and the order approving the receiver's final report. The principal ground upon which this motion was predicated was that the District Court lacked jurisdiction of the entire receivership proceeding for the reason that it was filed in the Northern District of Indiana while all the fixed property of the Coal Company was located in the Southern District of Indiana, hence all acts of the court in the proceeding were null and void. The receiver moved to dismiss appellant's motion to vacate, and at a hearing on the latter motion, appellant stated to the court that he owned the notes which were the basis of his claim, and that Thomas Cochran had an interest in them. The receiver's motion to dismiss was sustained, and it is from this order that the appeal arises.

Appellant assigns as error the sustaining of the receiver's motion to dismiss his motion to vacate the order of sale and the approval of the receiver's final account, and the dismissing of his motion. The receiver filed his motion in this court to dismiss the appeal principally on the ground that the order appealed from was not an appealable· one. We overruled his motion without prejudice to his right to renew it upon the presentation of the cause on its merits, and the motion was so renewed.

We are convinced that appellee's motion to dismiss the appeal must be sustained for the reason that an appeal will not lie to the Circuit Court of Appeals from an order of the District Court denying a motion to vacate a judgment or decree. This court so held in Smith v. United States ex rel. Gorlo, 7 Cir., 52 F.2d 848, and Glinski v. United States, 7 Cir., 93 F.2d 418. It is contended, however, by appellant, that in the Smith case just referred to, the court, in speaking of certain exceptions to the rule, referred to the fact that those exceptions were in cases where the order appealed from vacated a previous decree or judgment at a term subsequent to the one at which it was entered, and when the court had lost jurisdiction of the original cause of action. However, that situation does not arise here because the motion to vacate the judgment entered September 9, was filed September 14, during the same term. The appellate jurisdiction of this court is wholly statutory. Dodge Mfg. Co. v. Patten, 7 Cir., 43 F.2d 472. Our jurisdiction is dependent upon the existence of an appealable order, Smith v. United States, supra, and we are without power to consider the questions raised on the merits.

Appellant seeks to parry the fact of the non-appealability of the order by facts alleged to prove the lack of jurisdiction of the District Court to enter any orders in the proceedings, and lack of notice to himself of the proceedings. It is clear that the question of venue is one which could be waived,[1] and the facts here presented clearly constitute a waiver of objection to the venue of the District Court for the Northern District of Indiana. We do not concede, however, that the venue was not properly in the Northern District of Indiana, under the allegations of the original bill, which was never attacked by appellant, as to form or· substance, until after the final report was approved.

For the reasons stated, we think the present motion to dismiss the appeal comes squarely within the rules, and the appeal must be, and it is hereby dismissed.

---

[1] Burnrite Coal Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841; United States v. Hvoslef, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813, Ann.Cas. 1916A, 286; Texas & Pacific R. Co. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L. Ed. 829; Ex parte Chicago R. I. & Pacific R. Co., 255 U.S. 273, 41 S.Ct. 288, 65 L.Ed. 631.